UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: Acetaminophen – ASD-ADHD Products Liability Litigation<br><br>This Document Relates To: All Cases | 22md3043 (DLC) |

## [PROPOSED] CASE MANAGEMENT ORDER NO. ___ ORDER ESTABLISHING PROTOCOL FOR ELECTRONICALLY STORED INFORMATION ("ESI")

### A.  SCOPE

1. **General.** The procedures and protocols set forth in this Order shall govern the production of ESI in this matter, unless the Parties agree in writing to change them or they are changed by the Court at the request of a Party. To the extent that non-parties produce documents in this case, the Parties agree to request that such non-parties adopt this Order.

2. **Scope and Methods of Production.** This Order does not address the scope of Defendants' production. The Parties shall meet and confer regarding custodial and non-custodial sources of potentially discoverable documents, including the production of databases or other structured data. Within 7 days of entry of this Order, the Parties shall meet and confer to discuss additional parameters for productions, including production date range(s) and search terms and the use of TAR/Predictive Coding, if applicable. Nothing in this Order shall be construed to compel use of TAR and/or predictive coding.

3. **Subsequent Orders.** This Order shall not preclude subsequent agreements between the Parties relating to ESI, nor shall it preclude any Party from seeking relief from or an amendment to this Order upon a showing of good cause.

4. Nothing in this protocol shall be deemed to constitute a waiver of any objections a

1

Producing Party may have with respect to any document request.

B. **DEFINITIONS**

4. "Electronically stored information" or "ESI," as used herein, means and refers to information as defined in Federal Rule of Civil Procedure 34(a)(l)(A).

5. "Native Format" means and refers to the format of ESI in which it was generated or as it is used by the Producing Party in the usual course of its business and in its regularly conducted activities.

6. "Media" means an object or device, including but not limited to a server, disc, tape, computer, drive, or other device, whether or not in the Producing Party's physical possession, on which data is or was stored.

7. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File, and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system, and for purposes of this Protocol (iii) information, such as Bates numbers, redaction status, privilege status, or confidentiality status created during the course of processing documents or ESI for production.

8. "OCR" means and refers to an optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

9. "Party" or "Parties" means and refers to the named Plaintiffs and/or Defendants in the above-captioned matter. "Producing Party" refers to a Party (or non-party that avails itself of

2

this Order) that produces documents in this litigation.

10. "Unitization" means the assembly of a set of scanned Hard-Copy documents and indicates where individual pages or files belong together as Documents for functional, archival and retrieval purposes. Unitization includes Logical Unitization, being the determination of pages that belong together as documents and which captures family relationships such as a parent document or message and its attachments, as well as Physical Unitization, which captures the assembly of individually scanned pages into Documents and where each Document begins and ends. Physical Unitization uses objects such as staples, paper clips, and folders to determine pages that belong together as Documents for functional, archival and retrieval purposes.

C.  **PRODUCTION**

11. **Production Format.** Unless otherwise specified herein, a Producing Party shall produce electronic documents in black-and-white, single page, 300 DPI, Group IV* tagged image file format ("TIFF") images with corresponding extracted full text and, to the extent possible, affiliated metadata containing the fields identified in the attached Exhibit A. A Producing Party: (1) shall produce PowerPoint files in color; and (2) shall accommodate reasonable requests for the production of specific images in color concerning other file types. TIFFs of ESI shall convey the same information and image as the original document, including all commenting, tracked changes, hidden text, and formatting that is visible in the document's native application. All hidden content will be expanded, extracted, and rendered in the TIFF file and to the extent possible, the Producing Party will instruct its vendor to force off Auto Date. A Producing Party may de-duplicate exact duplicates based on the individual file or file family's MD5-Hash, SHA-1, email duplicate spare messages (as defined by Relativity) or SHA-256 values in a manner that does not break up

document families (such as emails and attachments), but the original ESI shall be preserved. With regard to custodial files, a Producing Party may de-duplicate globally or only within a custodian's file, but the metadata shall individually indicate each custodian in whose files the document was found in the ALL CUSTODIANS field. If a Producing Party intends to de-duplicate within non-custodial files, or between custodial files and non-custodial files, the metadata provided with the produced documents shall indicate from which other source(s) the documents were de-duplicated.

All productions will include these additional specifications:

a. A load file for images, which shall indicate document breaks, page breaks within a single document and contain the parent/child (Email/Attachment) relationships of documents, when possible. The load file for production images should be in Opticon format (.opt). The opticon load file should follow the standard format below:

BatesNumber,VolumeName,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount

b. A delimited load file (.dat) containing a field with the full path and file name to Native Files produced and the metadata fields identified in Exhibit A (for ESI) (unless the filename is privileged). This file shall not include extracted or OCR'd text of the documents. The first line of the load file must be a header row identifying the field names. The load file should use the following delimiters:

| ASCII | Character | 020 | – | Field separator |
| ASCII | Character | 254 | – | Text qualifier |
| ASCII | Character | 174 | – | Return value |

The multi-value delimiter should be a semicolon.

4

    c.    Document level .txt files for all native documents containing extracted full text; provided, however, that OCR text can be provided if extracted text is not available (in which case the parties shall meet and confer regarding the reason extracted text is not available) or if the document has been redacted pursuant to this protocol or the Protective Order in place in this litigation;

    d.    Bates number branding and appropriate Confidentiality designations (if any) on the face of the image; and

    e.    Slip sheets may be used as placeholders for any email attachments that are not responsive, which should indicate "non-responsive attachment not produced" or language to that effect.

If ESI discoverable in this proceeding was previously produced in another legal proceeding, the Producing Party may elect to produce that information in the form in which it was previously produced and shall be under no obligation to conform that prior production to the specifications contained in this Protocol.

    f.    **Email Threading**: Email threads are email communications that contain lesser-included email communications that also may exist separately in the Party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. When producing the most-inclusive email in a thread, the parties need not also produce lesser-included emails in the thread. Participants in lesser-included emails that otherwise would have been subject to review shall be listed in the most-inclusive email's "ALL_PARTICIPANTS" field included in the data load file (see Attachment A). Following production of most inclusive email threads, a

5

        Receiving Party may make reasonable requests for individual lesser-included emails. The Producing Party shall cooperate reasonably in responding to any such requests if the requested lesser-included emails otherwise would have been subject to production.

g.   **Supplemental Production Overlays**: If the Producing Party makes supplemental productions following an initial production, that Producing Party also shall provide with each supplemental production an overlay file to allow the Receiving Party to update the ALL_CUSTODIANS field. The overlay file shall include all custodians listed in the ALL_CUSTODIANS field in prior productions and any custodians newly identified in the current supplemental production.

12.   **Production of Native Format ESI.**

a.   A Producing Party shall produce discoverable portions of Excel spreadsheets, audio files, electronic presentations (e.g. Power Point), and video files in their Native Format. Word processing files with track changes, comments or hidden text (*e.g.*, Word) may be produced in either TIFF or native format.

b.   MS OneNote files may be produced in TIFF format with the OneNote file as the parent and all pages and embedded files as children, except that attachments of file types that are to be produced natively per this Protocol (*i.e.*, Excel spreadsheets) shall be produced in Native Format.

c.   If production in Native Format is necessary to decipher the meaning, context, or content of a document produced in TIFF, the Producing Party will honor reasonable requests for either the production of the original document for inspection and copying or production of the document in Native Format.

6

d. Metadata contained in or associated with each Native File, as set forth in Exhibit A, will be produced to the extent technologically possible and if not protected from discovery by privilege or work product. The Native Format document shall be renamed with a Bates number and, as applicable, a suitable confidentiality designation; for example, "ABC00000002_Confidential". A TIFF placeholder shall be produced in addition to the Native File.

e. Any Producing Party producing ESI in Native Format shall produce a slip sheet in Black and White Group IV* TIFF that is endorsed with the Bates number.

13. **Production of SAS Files.** The parties shall meet and confer regarding whether (and, if so, in what format) Defendants shall produce Statistical Analysis System ("SAS") files or their equivalent for data relating to scientific studies. If ESI in commercial or proprietary database format can be produced in an already existing and reasonably available report form, the Parties will produce the information in such a report form, in the reasonably usable TIFF-image format provided, however, that if the data is exported to Excel or csv format by default, it shall be produced in Native Format.

14. **Appearance and Content.** Other than as required in this paragraph, no electronic document may be intentionally manipulated to change how the source document would have appeared, without prior agreement of the Receiving Party, except that hidden information (such as redline or comments) will be revealed. Additionally, all emails will be produced with the BCC field visible, to the extent it is available with the document. "Dynamic fields" (such as auto-date and time) shall be produced showing the field code *(e.g.,* [AUTODATE]), rather than the values for such fields existing at the time the file is processed. Therefore, subject to any appropriate

redaction and any revealed hidden information, each document's electronic image shall convey the same information and image as the original document. This means that font size, bold, italics, underline and other font features shall be maintained. If a document is illegible or unviewable to the Receiving Party, the Parties shall discuss appropriate measures to address the issue through an agreed-upon resolution, such as, for example, enlarging font size.

15. **Document Numbering for TIFF Images.** Each page of a document produced as TIFF images shall have a legible, unique Bates number electronically "burned" onto the image at a location that does not obliterate, conceal or interfere with any information from the source document and a Production Volume Number for any storage device (e.g., CD, USB, hard drive) containing such files. The Bates number for each document shall be created so as to identify the Producing Party. Each Producing Party shall have a unique identifying name. The Bates number shall not include underscores or other non-alphanumeric characters. Each page of each production shall have a unique number of up to eight digits. The unused digits of the unique number shall be filled with placeholder zeros (0) to facilitate electronic sorting of the documents. Any Producing Party producing ESI in Native Format, as set forth above, shall produce a slip sheet in Black and White Group IV* TIFF that is endorsed with the Bates number.

16. **Production Media.** The Producing Party shall produce documents on readily accessible computer or electronic media as the Parties may hereafter agree upon, including CD-ROM, DVD, external hard drive (with standard PC compatible interface or access to a secure Online Repository agreed upon by the Parties) or via secure FTP site. Each piece of Production Media shall be assigned a production number or other unique identifying label corresponding to the date of the production of documents on the Production Media, as well as the sequence of the

material in that production. The Producing Party shall accompany all document productions with a transmittal cover letter identifying the documents produced and an Excel spreadsheet providing the Bates range(s) for each distinct custodian source.

17. **Redactions.** To the extent that a document is produced in redacted form, any redactions shall be clearly indicated on the face of the document, and the metadata for that document should indicate that there is a redaction, and the reason(s) for any redaction(s). Where a responsive document contains both redacted and non-redacted content, the Producing Party shall produce the remainder of the non-redacted portions of the document and the corresponding text. The production of a document in a redacted form does not affect the Producing Party's obligation to properly document and substantiate the assertion of privilege over the content on a privilege log. Except as provided above in paragraph 12(a), documents that are to be produced in Native Format, but that require redactions, may be produced as TIFF images (with extracted text) with the relevant portions redacted, or if a TIFF image production is not technically feasible, the Producing Party may produce a copy of the Native File with the relevant portions replaced with "[REDACTED]" or a similar mark. If modification of a Native File is required for redaction purposes, metadata information associated with that file should remain unchanged unless it also requires redaction.

18. **Confidentiality of Produced ESI.** Nothing in this Order is intended to be inconsistent with the Stipulated Protective Order that the Court will enter in this MDL, and where anything in this Order is inconsistent with the terms of the Stipulated Protective Order, the terms of the Stipulated Protective Order shall prevail. If a document is produced subject to a claim that it is protected from disclosure under the Protective Order, the word "CONFIDENTIAL" or

"HIGHLY CONFIDENTIAL" shall be burned electronically on each page of such document.

19. **Parent-Child Relationships.** Parent-child relationships (association between an attachment and its parent document) shall be preserved. The attachment(s) shall be produced adjacent to the parent document, in terms of Bates numbers, with the first attachment being named with the next sequential number after the parent, and any additional attachment(s) sequentially numbered after that first attachment. Email attachments and embedded files or "modern attachments" (i.e., hyperlinks pointing to files stored in the cloud or a shared repository such as SharePoint and other types of collaborative data sources, instead of being directly attached to a message as has been historically common with email communications ) shall be collected and produced with the parent message. "PRODBEGATT" and "PRODENDATT" fields listing the unique beginning Bates number of the parent documents and ending number of the last attachment must be populated for each child and parent document.

20. **Password Protection.** In the event any Document or ESI (or portion thereof) produced is password protected, if feasible the Producing Party will provide a means to access the document or ESI. If the Producing Party cannot provide a means to gain access to that ESI after a reasonable effort to identify a means to gain access to that ESI (for example, no password is located following a reasonable inquiry), then the Producing Party shall be relieved of any further obligation under this paragraph.

21. **Third Party ESI.** A party that issues a non-Party subpoena (the "Issuing Party") shall include a copy of this Order and the order concerning confidentiality agreed and/or entered into this litigation with the subpoena and state that the Parties in the litigation have requested that Third Parties produce documents in accordance with the specifications set forth herein. The

issuing Party shall produce a copy to all other Parties of any documents and ESI (including any metadata) obtained under subpoena to a non-Party. If the non-Party production is not Bates-stamped, the Issuing Party will endorse the non-Party production with unique Bates prefixes and numbering scheme prior to reproducing them to all other Parties.

D. **MISCELLANEOUS**

22. **English Language.** To the extent any data exists in more than one language, the data shall be produced in English, if available. If no English version of a document is available, the Producing Party does not have an obligation to produce an English translation of a document.

23. **Cooperation.** The Parties shall, as necessary, meet and confer to exchange information regarding issues associated with any production of ESI, including, but not limited to, database field definitions and structure or document delivery mechanisms.

24. **Variance.** Any practice or procedure set forth herein may be varied by written agreement of the Parties. Agreement by email correspondence is acceptable.

25. **Paper Discovery.** Nothing in this Order is intended to interfere with, preclude, alter, or otherwise affect the Parties' independent obligations to engage in discovery involving and, where appropriate, produce materials that exist only in paper format. All paper documents shall be produced as static images. The images will be black-and-white, single page, 300 DPI, Group IV TIFF images, unless color is required to read or understand the meaning of the document and a producing party shall accommodate reasonable requests for color versions of documents previously produced in black and white with corresponding OCR text in document level .TXT format and standard load files, which can be used with commercially available litigation software packages. Producing paper documents in such form does not change their character from paper

documents into ESI. All other metadata that does not exist as part of the original document need not be produced for paper documents produced as TIFF images. The parties shall meet and confer with respect to the unitizing of hard copy documents and grouping of documents into families. If paper documents discoverable in this proceeding were previously produced in another legal proceeding, the Producing Party may elect to produce that information in the form in which it was previously produced and shall be under no obligation to conform that prior production to the specifications contained in this Protocol.

26. **Replacement Images.** In the event that an already produced document or set of documents has to be re-produced or a new load file or "overlay" is produced for any production, the new production shall, if reasonably feasible, maintain the same Bates number for any re-produced documents, with the addition of a suffix at the end of the Bates number, and without creating a new database record. If maintaining the same Bates number is not reasonably feasible, the Producing Party shall provide a cross-reference for the new and old Bates numbers.

27. **Metadata as Evidence.** This Order shall not be construed to affect whether information contained in the metadata produced shall be admissible evidence about the corresponding document; rather, the Parties' positions with regard to admissibility shall be preserved for trial.

28. If the forms of production allowed by this protocol present an undue burden or cost for a Producing Party, the parties shall meet and confer to try to agree on a reasonable, alternative form of production.

29. When documents produced in accordance with this protocol are used in any proceeding herein, including depositions and hearings, the image copy of documents as described

herein shall be the copy used unless the image copy is so illegible or unwieldy to make it infeasible to use as a deposition exhibit, in which case the native version may be used. If the native version is used as an exhibit, the record of the deposition must identify the exhibit using its BATES number, and the BATES number shall also be written on any paper or electronic copy of the exhibit. The confidentiality designation of the document shall also be stated on the record of the deposition and shall be written on any paper or electronic copy of the exhibit. Extracted text files shall not be used in any proceeding as a substitute for the image of any document.

SO ORDERED.

**Dated:** New York, New York
January 17, 2023

_____
Denise Cote
United States District Court Judge

13

Case 1:22-md-03043-DLC   Document 344-1   Filed 01/13/23   Page 14 of 16
Case 1:22-md-03043-DLC   Document 345-1   Filed 01/17/23   Page 14 of 16

## EXHIBIT A – FIELDS AND METADATA TO BE PRODUCED

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| PRODBEG [Key Value] | ABC00000001 | Yes | Yes | Beginning production number |
| PRODEND | ABC00000008 | Yes | Yes | Ending production number |
| PRODBEGATT | ABC00000009 | Yes | Yes | Beginning production number of parent document in a family |
| PRODENDATT | ABC00001005 | Yes | Yes | Ending production number of the last page of the last attachment in a family |
| CUSTODIAN | Smith, John | Yes | Yes | Custodian in whose file the document is produced (the value always will be a single name; *i.e.*, only one custodian will be listed) |
| ALL CUSTODIANS | LAST, FIRST Smith, John Doe, Jane | Yes | Yes | Custodian(s) that possessed the document—multiple custodians separated by semicolon |
| SOURCE | XYZ SHAREDRIVE | Yes | Yes | For non-custodial files |
| OTHER SOURCE | XYZ SHAREFILES | Yes | Yes | Additional locations for documents found in a custodial file and in a non-custodial areas or found in multiple non-custodial areas. |
| NUMATTACH | 2 | Yes | | Number of attachments |
| NATIVEFILE | Natives\001\001\ABC 00000001.xls | N/A | Yes | Path and file name for native file on production media |
| FILEDESC | Microsoft Office 2007 Document | N/A | Yes | Description of the type of file for the produced record. |
| FOLDER | \My Documents\Document1.doc | N/A | Yes | Original source folder for the record produced. |
| FILENAME | Document1.doc | N/A | Yes | Name of original electronic file as collected. |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| DOCEXT | DOC | N/A | Yes | File extension for email or e-doc |
| PAGES | 2 | Yes | Yes | Number of pages in the produced document or electronic file (not applicable to native file productions). |
| AUTHOR | John Smith | N/A | Yes | Author information as derived from the properties of the document. |
| DATECREATED | 10/09/2005 | N/A | Yes | Date on which non-email file was created as extracted from file system metadata |
| DATELASTMOD | 10/09/2005 | N/A | Yes | Last date on which non-email file was modified as extracted from file system metadata |
| SUBJECT | Changes to Access Database | N/A | Yes | "Subject" field extracted from email message or metadata properties of the document |
| FROM | John Beech | N/A | Yes | "From" field extracted from email message |
| TO | Janice Birch | N/A | Yes | "To" field extracted from email message |
| CC | Frank Maple | N/A | Yes | "Cc" or "carbon copy" field extracted from email message |
| BCC | John Oakwood | N/A | Yes | "Bcc" or "blind carbon copy" field extracted from email message |
| DATESENT | 10/10/2005 | N/A | Yes | Sent date of email message (mm/dd/yyyy format) |
| TIMESENT | 10:33 am | N/A | Yes | Sent time of email message, time zone set to UTC |
| DATERCVD | 10/10/2005 | N/A | Yes | Received date of email message (mm/dd/yyyy format) |
| TIMERCVD | 10:33 am | N/A | Yes | Received time of email message, time zone set to UTC |

| Field | Sample Data | Scanned Docs | Email and E-Docs | Comment |
|---|---|---|---|---|
| ALL_PARTICIPANTS | John Beech, Janice Birch, Frank Maple | N/A | Yes | For emails, if feasible; lists all participants in lesser-included emails that, without email threading, would have been subject to review |
| MSGID | <D03802DB-0965-4E66-9629-57FEA7C7CC7D@gmail.com> | N/A | Yes | Message ID for parent e-mail |
| CONFIDENTIALITY | HIGHLY CONFIDENTIAL | Yes | Yes | Text of confidentiality designation, if any |
| TEXTPATH | Text\001\001\ABC00000001.txt | Yes | Yes | Path to *.txt file containing extracted or OCR text |
| FILE_PRODUCED_IN_NATIVE_AND_TIFF | Yes | N/A | Yes | Limited to documents reproduced in native format |
| MD5_HASH | 309997447f..... | N/A | Yes | MD5 Hash value for ESI |
| PRODVOL | VOL001 | Yes | Yes | Name of the Production Volume |
| ATTACHMENT NAMES | | N/A | Yes | File Name of all attachments |
| FILESIZE | | | Yes | Size of application file/document (in KB) |
| REDACTED | Y/N | Yes | Yes | Identifies documents with redactions |
| REDACTION REASON | | Yes | Yes | Identifies the type of redaction |
| CONVERSATIONID | | N/A | Yes | e.g., from Outlook or lotus notes |