N62QaceC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

IN RE:  ACETAMINOPHEN = ASD
-ADHD Product Liability
Litigation

                                    22 MD 3043 (DLC)
                                    Remote Teleconference
------------------------------x

                                    New York, N.Y.
                                    June 2, 2023
                                    3:00 p.m.

Before:

                HON. DENISE L. COTE

                                    District Judge

                     APPEARANCES

KELLER POSTMAN LLC
     Attorneys for Plaintiffs
ASHLEY KELLER
DANIEL SULLIVAN
ASHLEY BARRIERE

THE LANIER LAW FIRM
     Attorneys for Plaintiffs
EVAN JANUSH

MOSKOW LAW GROUP LLC
     Attorney for Plaintiffs
NEAL L. MOSKOW

BARNES & THORNBURG LLP
     Attorneys for Defendants XX
KRISTEN L. RICHER
JESSICA L. BRENNAN

KING & SPALDING LLP
     Attorneys for Defendant XX
KRISTEN R. FOURNIER

N62QaceC

(The Court and all parties appearing via remote teleconference)

THE COURT:  Good afternoon.

I'll call the case.  In Re Acetaminophen 22 MD 3043.

Who will be speaking on behalf of the plaintiff?

MR. JANUSH:  Evan Janush, The Lanier Law Firm, on behalf of the plaintiff.

THE COURT:  Who will be speaking on behalf of defendants?

MS. BRENNAN:  Good afternoon.  Jessica L. Brennan from Barnes & Thornburg on behalf of the defendant.

THE COURT:  Thank you so much.

So this conference has been called because I received a letter yesterday evening from plaintiff's counsel.  The letter is dated June 1.  I recently received a letter from defense counsel, obviously, dated June 2.  And so we are going to begin with plaintiffs having an opportunity to be heard, and then I will hear from defense counsel.

Mr. Janush.

MR. JANUSH:  Thank you, your Honor.

Your Honor, the first item that I'd like to address before the Court is the timing of these nine subject subpoenas. Plaintiff feels that defendant pushed for a very early cutoff date of discovery.  They wanted fact discovery to end early and expert reports to end so that a decision could be made in

Daubert's.  We argued and re-argued before the Court the discovery schedule.  The issues that have been raised in these subpoenas are issues that could have been brought up long, long ago.

Two days before the fact discovery cutoff of today, June 2, broad subpoenas were served, served on the non-parties, on at least some of the non-parties before notice of intent to serve was even provided to counsel under 45(a)(4).  So we are at a complete disadvantage with respect to the schedule, with respect to what we are doing today preparing for expert reports to be served on June 16.  We should not be sandbagged with discovery efforts that are belated.

And that gets into the second argument, and, that is, if this is really all about the discovery that was served on the plaintiffs as a purported effort to roadblock -- by plaintiffs to roadblock defendant's discovery, that is facially and substantively invalid.  That argument is flawed.

Number one, we didn't roadblock discovery.  We served valid objections to the discovery served on plaintiffs, so valid that the defendants pulled some of their discovery requests.

Two, we've met and conferred concerning the served discovery.  We've addressed that on Monday we are going to be supplementing.  We are serving a privilege log.  We are serving supplemental responses.  One of the responses we are serving

N62QaceC

concerns the essence of the discovery served on plaintiffs. Whether plaintiffs' finance study authors.  The answer is plainly no.  We advised the Court of that in writing.  We are now going to on Monday be advising the defendants of that too. The notion that a May 2 Tweet by a post on social media by Ann Bauer has anything to do with plaintiffs is misplaced.  The notion that a social media Tweet of May 2 is being used to bootstrap their argument is wrong because they could have served their subpoenas on May 3, not on May 30.

Moreover, when you look at the substance of the subpoenas, the subpoenas that have been served are broader. They do not square on all four corners with the discovery served on plaintiff.  These subpoenas seek drafts of studies. These subpoenas seek communications by and among the study authors.  They seek communications and outreach concerning consensus statements and invitees, folks who would have been invited to sign the consensus statement and what that back and forth may look like.

And, frankly, plaintiffs will not have the opportunity to review that discovery in advance of the submission of our expert reports to address that to determine how our own potential experts might be cross-examined at their deposition. It's very belated.

To be clear, we're not saying that third-party discovery has no place in this litigation or that it's wrong to

serve third-party discovery.  Not at all.  We're saying it's wrong to have served it when it was served.

Moreover, with respect to this very last point of wrong to serve it when it was served, your Honor, frankly, we have learned a lot belatedly in this litigation through late production of documents by JJCI, documents that were produced even after the substantial completion date and in preparation for the five depositions that have been taken.  We have a list of third-party subpoenas that we seek to get out the door.  We acted with the utmost good faith and integrity in withholding those subpoenas because we realized the date we would get them out was way too close to the end of fact discovery, and we believed that the end of fact discovery didn't mean the last date to serve a subpoena.  And couldn't mean that because of the close temporal nexus between June 2 and June 16, the date our expert reports are due, nor do we believe that that was the Court's intent when we set this discovery schedule.

Moreover, the type of requests that were made, they could have been made at the outset of this litigation.  They're not all connected to plaintiff.  We will respond to the discovery served on plaintiffs.  We will respond with our supplemental responses.  If there are issues defendants have with respect to purported roadblocking, we will come with clean hands and good faith before this Court and address those discovery disputes.  That's the proper way at this late date to

N62QaceC

handle premature claims of roadblocking that are frankly attacks on our character and on our conduct and are wrong when viewed in the context of defendants who have pulled some of the objections to our purported roadblocking.

That's in a nutshell, your Honor, where our argument is, and if I have more to say and the Court invites me after Ms. Brennan speaks, I certainly will respond.

THE COURT:  Thank you.

Ms. Brennan, could you address, first of all, the Rule 45(a)(4) issue?

MS. BRENNAN:  Sure, your Honor.  We did serve notice on the plaintiffs the day that we served the subpoenas.  I cannot attest to, you know, when Mr. Janush received our notice, but we were not serving people after notices were served on the individuals receiving the subpoenas.  So I'm not sure what the issue was there.

There is no, you know, requirement in Rule 45 that we give X amount of days to the plaintiff before we go ahead and serve these subpoenas.  And, quite frankly, Mr. Janush's point in the interest of time, we didn't have that luxury.

And so, your Honor, do you have an additional question regarding that?

THE COURT:  Well, I am pulling out the rule.  The notice is to be served on the party before it is served, I believe, on the third party.  So are you just telling me you

served it contemporaneously on the same day but didn't follow the directives of the rule precisely?

MS. BRENNAN:  Your Honor, we attempted to follow the directives of the rule, and our understanding is that we did, but we did serve on the same day both the plaintiffs and the individuals who are being subpoenaed.

THE COURT:  Okay.  So I'll ask for a followup submission to me confirming, or not, that you served the plaintiffs before you served the third parties.

Let's turn to the substance of the issue.  What do you want to tell me?

MS. BRENNAN:  Sure, your Honor.  Thank you.

So just working backwards a bit regarding the timing and Mr. Janush's point in the course of working up the science and the fact discovery, and, you know, based on plaintiff's objections to the discovery that was served on them, we collectively as a defense group determined that these subpoenas were necessary and required.  We disagree that we could have or, you know, could have even imagined that this would have been required or served back in December.

Defendants are not confident that plaintiffs will provide the information sought through the interrogatories in our request for production.  Whether strategic or not, we know we won't receive anything until after today, again, after the Court ordered fact discovery end date.  And, you know, the

overarching issue here is that, unfortunately, this type of litigation-sponsored science has been a practice used by plaintiffs in MDLs.

We provided your Honor with just a few examples in the briefing, but there are more.  There's the Zofran MDL, there's the Zantac MDLs where key studies relied on by plaintiff were fully bought and paid for by plaintiffs' attorneys.

Defendants are simply seeking access to the same information.  It speaks to bias.  It speaks to reliability.  This entire process that we've gone through, your Honor, first with the motion for protective order on the affirmative discovery, now this motion to quash the subpoenas, it just begs the question, why is it being fought so hard?  Why not respond substantively to the discovery that's been served and end this so-called delay?

This adds to the timing.  The (indecipherable) are timely from the defense perspective.  We served them before the end of fact discovery.  There is no requirement that responses be received by today.  In fact, we know that certain fact discovery will continue after today.

I've already flagged for the Court the plaintiff's own discovery responses.  There is also, as far as defendants are aware, a third-party subpoena by the plaintiff from which they're still waiting for a document production.  And while we haven't necessarily kept apprised of the status, we have not

N62QaceC

been provided with any documents that were produced in response to that third-party subpoena, so we are here today assuming that it is still pending and, of course, not expected to come in today.  So that is just another example of documents that are expected after the discovery cutoff.

I raise these not as complaints but simply pointing out the fact that we may receive these subpoena responses after today is not as obscure a concept as presented in the motion to quash.  And, in fact, we have received responses and outlined in our letter from three of the nine individuals who received subpoenas indicating they are willing to, you know, comply.  We understand from plaintiffs that another three are their own experts, and so we set forth a proposal to deal with that without having to compromise our rights in that regard.  And we waited to follow up with the last three because we wanted to see from your Honor what the directive was here today.

So putting all of that aside, if this is information that plaintiffs themselves felt that they truly needed for their experts, I would assume that plaintiffs would have subpoenaed it themselves, and they didn't.  The point there is that if responsive information does exist, plaintiffs already likely have or know about it, and defendants are entitled to this discovery.  There is no basis to quash the subpoenas, and, you know, for those reasons, we would respectfully request that the motion to quash be denied.

THE COURT:  So, Ms. Brennan, as I understand it, part of the defendant's argument is that you began to seek this information in your March 31 request serve on the plaintiffs. Am I right?

MS. BRENNAN:  In part, yes.

THE COURT:  Okay.  And as I understand it, in part to what's happened here, the plaintiffs are complaining that the third-party subpoenas you have recently served extend beyond the scope of what you sought through the March 31 requests on the plaintiffs.  Do you want to address that?

MS. BRENNAN:  Sure, your Honor.  And, you know, I actually did need to address the scope because regarding scope, we did agree to narrow the scope in an effort to compromise with the plaintiffs on this point.  They raised a concern similar to what was discussed here today that they could potentially need some of the information that might be received in response to the subpoenas in connection with their expert reports.  They specifically flagged for us drafts of acetaminophen studies and communications between acetaminophen study authors.

And so we did voluntarily agree to withdraw those requests.  I think that that does address some of the scope issue.  Where I think that plaintiffs still have big issue with the subpoenas is related to similar requests in connection with the consensus statement.  So as your Honor knows, the consensus

N62QaceC

statement by Dr. Bauer is kind of a cornerstone of the plaintiff's complaint in this litigation. It's not a scientific study. It's just what the title implies. It's a statement. There is no underlying data. There is nothing that particularly moves the needle on the science such that it would impact expert science opinions, but where it does become highly relevant is if it was influenced by this litigation or if its authors or signatories were influenced by this litigation. And, again, plaintiffs are privy to this information. The defendants, the Court, the public are not. And it just underscores the importance of closing the loop on this point.

THE COURT: I just want to make sure I understand what you're telling me, Ms. Brennan. You're saying that your third-party subpoenas are broader in scope than what you sought from the plaintiffs on March 31, but it's important for you to get that additional information even though you didn't seek it through the March 31 request.

MS. BRENNAN: Correct, your Honor. And -- well, presumably if there is an information, you know, responsive to these requests in terms of plaintiffs, you know, being in communication with these individuals, again, they likely have access to this same information. So we're just seeking access to the same.

THE COURT: I don't quite understand what you've just told me, Ms. Brennan. I take it you are still saying that

you're requesting information -- more information than you sought through the March 31 request of the plaintiff.

MS. BRENNAN:  Potentially, if the plaintiffs are not in possession of these materials, yes.

THE COURT:  And what would you identify that as being? The drafts of the consensus report.  Anything else?

MS. BRENNAN:  Yes, your Honor.  So I would identify that as the drafts of the consensus statement and communications related to the consensus statement among the subpoena recipient authors or other signatories.

THE COURT:  So why did you not seek that earlier than the -- let me make sure -- May 30 service of the third-party document request?

MS. BRENNAN:  That's a good question, your Honor, and I think it goes back to my original statement in terms of when new information is learned during the course of working up science, fact discovery, and the like.  And this is not information that necessarily sees light in terms of the potential bias and reliability issues until more recently.

THE COURT:  Okay.  Thank you.  That's helpful.

Mr. Janush.

MR. JANUSH:  Your Honor, I have a lot to respond with. It is almost hard to begin given the arguments that plaintiffs are facing today.  Again, I have to begin with the notion plaintiffs put in writing that we didn't pay for science.  We

addressed this.  We are officers of the court.  We are not roadblocking, hiding the ball, or otherwise.  The same response is coming on Monday.  But the discovery that is being sought is not at all limited to that singular question of plaintiffs funding science.  Turning to other irrelevant litigation that Ms. Brennan seeks to turn to is wrong.  We have said as officers of the court that we didn't do this.

THE COURT:  So, Mr. Janush, are you referring to the statement in the May 4 letter?

MR. JANUSH:  I'm referring to -- yes, I am referring to the statement in our May 4 letter, and we have advised the Court that we haven't done funded studies or that we are advising defendants again on Monday that we have not funded studies.

The issue that we are addressing is so much broader than that.  And to represent, as Ms. Brennan has, the subject of narrowing, if defendants were solely interested in funding of studies, their requests should be so limited.  However, that is not what has been done here.  Depositions have been requested in these subpoenas, your Honor, not just documents.  Depositions have been requested.  We don't have the ability to be running around addressing depositions with these study authors at this time.  Drafts of studies?  How would we have that?  We didn't fund that.  We didn't communicate with these folks.  Ann Bauer, from my knowledge, has been involved in

N62QaceC

studying these issues since 2013, long before any of the lawyers on this call on the plaintiffs' side even probably knew to look at Tylenol and acetaminophen or paracetamol as an issue of potential causation vis-a-vis fetal neuro-developmental issues.  We just didn't even know this at this time.

The notion that a study author posted to social media some issue that she has been following because this has been her life's work recently, and to tie that to plaintiff is a stretch.  It strains credibility and is offensive to us.  It's wrong.

And beyond that, to tie plaintiff's third-party subpoena that is outstanding to this conduct is equally offensive.  Your Honor, I am leading reading that third-party subpoena.  I am going to tell you what it is.  It was to the Consumer Healthcare Products Association, the entity that the FDA advised me in writing in an email, I produced to the defendants that if there were any conversations between the FDA and the producers of acetaminophen or Tylenol, the manufacturers, they would -- both communications would have run between the FDA and the CHPA because of the fact that this is a monograph product, and that the CHPA is effectively the lobbying arm that would be communicating with FDA.  We served a subpoena, your Honor, 72 days ago.  Because of burden issues and expense issues, we didn't press the notion that the third party needed to hire an outside vendor and force feed this

N62QaceC

subpoena responses the document review faster.  They have one IT person.  They're working at their speed, not my speed.  I don't have a document producer.  I don't have something to give them.

But, your Honor, we understand that we didn't get the benefit of these documents, which may have been very helpful for our expert reports or four issues and save one (indecipherable).  But we also understand something fundamentally relevant to that third-party subpoena that none of the defendants' subpoenas are relevant to.  On April 7, your Honor demanded a (indecipherable) proposed label change to the Court.  The documents sought between the CHPA, the Consumer Healthcare Products Association, and the FDA and JJCI and any other manufacturers may be very relevant to be separate inquiry being addressed by the Court concerning the FDA, the FDA's conduct, the label, proposed label change request that we submitted to the Court.  It's not -- it wasn't an effort designed to be a phase one only issue.  It was issued at a date well before the label issue had to be brought before the Court on April 7.  So that just gives you context that we are not in a land of apples to apples here.  One subpoena issued 72 days ago that's outstanding due to burden and expense issues or the third party is nowhere near what we are talking about today.

THE COURT:  Thank you, Mr. Janush.

Without rehashing the entire history here, I am going

N62QaceC

to allow the subpoenas to be served on, as I understand it, and responded to with respect to six of the nine third parties, at least to the extent that the requests concern topics covered in the March 31 requests to the plaintiff.  And the only topic that has been identified to me is not essentially covered by those March 31 requests are requests for the drafts of the consensus statement or communications about those drafts or the consensus statement itself.  So I will grant the request to quash finding that the service of the third-party subpoenas on that topic is untimely.

Often third-party discovery is served such that there can be a reasonable expectation that it will be responded to during the period allowed for fact discovery.  And while fact discovery may extend beyond that date, that is certainly the way that it should occur to save parties the expense of following up with late produced discovery.

So I don't find that the plaintiffs should take offense at the fact that the third-party subpoenas were served despite the representation in the May 4 letter, that the plaintiff's leadership members have not paid for and that they are unaware of any plaintiffs' lawyers paying for the studies at issue here.

Defense counsel had a right to receive that statement formally, which they tried to obtain through the March 31 request.  They may or may not get a complete response coming

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

N62QaceC

next week.  I assume they will, but they haven't received it yet.  And so I don't find the third-party subpoenas that were served on these nine individuals to be untimely in the circumstances.  I've looked at the exchange of the meet-and-confer correspondence between the plaintiffs and defendants and you all have been working hard at this issue trying to figure out what should or must be produced.  So you have my ruling with respect to production of documents.

With respect to depositions, I think I remember reading, Ms. Brennan, you are not sure you are going to take any depositions, and we're now down to now six third parties.

Do I remember that correctly?

MS. BRENNAN:  That is correct, your Honor.  We don't want to waive our right to these depositions, but if it would be helpful to your Honor, we would withdraw without prejudice at this time any requirement that these individuals appear for deposition subject to, of course, receipt of the documents responsive to the subpoenas.

THE COURT:  I think that makes sense.  Everybody is busy looking at or preparing for the expert discovery. Depending what the documents show, if you believe a deposition is appropriate or necessary, you will discuss it with plaintiff's counsel, and, if necessary, raise the issue again with me.

(Indecipherable counsel speaking)

THE COURT:  Is that you, Mr. Janush?

MR. JANUSH:  Yes, your Honor.  Thank you.  I had one point of clarification.  I want to be very clear before the Court right now and say I have argued about only a couple of examples where the subpoenas diverged from the subpoenas served on plaintiff's counsel or on plaintiff, and, therefore, I would like to request that the Court clarify that the topics that remain are limited to only the topics covered in the March 31 subpoena, and perhaps even require the parties to confirm in writing what it is that is going to be sought going forward, so that if we have a disagreement, we can return to the Court because I don't want this argument to be reflective of each nuanced difference between the subpoenas, and I'm not sure the Court wants to get into a sentence-by-sentence difference. It is beyond the points raised in this argument.

THE COURT:  Mr. Janush, I think it would be helpful if we bring finality to this discussion so you can move on with your lives.  The only topic that has been described to me as broader than the topics addressed in the March 31 request are communications about the consensus statement and drafts of the consensus statement.  Other than that, defendants can have a full production from the six third parties.

Good luck, counsel.  Enjoy the weekend.

MS. BRENNAN:  Your Honor, in fairness, I do want to add that defendants did voluntarily agree to withdraw the same

N62QaceC

request as to acetaminophen study.  I think that we are all aligned on that.  Thank you.

THE COURT:  Thank you.

Thank you, counsel.

(Adjourned)