# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: Acetaminophen – ASD-ADHD Products Liability Litigation**<br><br>**This Document Relates To:**<br>***Stokes et al. v. Johnson & Johnson Consumer Inc.*, 1:23-cv-11278**<br>***Phippen et al. v. Johnson & Johnson Consumer Inc.*, 1:23-cv-11079**<br>***Bordoy et al v. Johnson & Johnson Consumer Inc.*, 1:24-cv-693**<br>***Day et al. v. Johnson & Johnson Consumer Inc. et al.*, 1:23-cv-11252**<br>***Mota et al. v. Johnson & Johnson Consumer Inc.*, 1:23-cv-11074** | **22md3043 (DLC)** |

**<u>Stokes, Phippen, Bordoy, Day and Mota Plaintiffs' Response To The Court's January 16, 2024 Order to Show Cause, Dkt. 1394</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................................ii

BACKGROUND ........................................................................................................ 1

ARGUMENT .............................................................................................................. 4

      I.      THE MOTA PLAINTIFFS HAVE A DUE PROCESS RIGHT TO OPPOSE
            SUMMARY JUDGMENT WITH THEIR OWN EVIDENCE OF GENERAL
            CAUSATION. .................................................................................................. 4

            A.      The Mota Plaintiffs Are Entitled to Build and Rely On Their Own
                   Summary Judgment Record. ...................................................................... 4

            B.      The Court's Orders Do Not Change the Preclusion Analysis................... 17

            C.      Judicial Efficiency Does Not Trump Plaintiffs' Due Process Rights. ...... 20

CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                     **Page(s)**

*Armstrong v. Manzo*,
   380 U.S. 545 (1965) ..................................................................................................4

*Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*,
   No. 22CV10147 (DLC), 2023 WL 3135745 (S.D.N.Y. Apr. 27, 2023) ...................6, 9, 10, 13

*Bifolck v. Philip Morris USA Inc.*,
   936 F.3d 74 (2d Cir. 2019) ....................................................................................6, 7

*Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*,
   402 U.S. 313 (1971) .............................................................................................4, 16

*Briscoe v. City of New Haven*,
   654 F.3d 200 (2d Cir. 2011) ......................................................................................10

*Casey v. Denton*,
   No. 3:17-CV-00521, 2018 WL 4205153 (S.D. Ill. Sept. 4, 2018) ..........................................19

*Cent. Hudson Gas & Elec. v. Empresa Naviera Santa S.A.*,
   56 F.3d 359 (2d Cir. 1995) ......................................................................................6

*Deery v. Cray*,
   72 U.S. 795 ......................................................................................................8

*Duckett v. Fuller*,
   819 F.3d 740 (4th Cir. 2016) ................................................................................10, 13

*In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*,
   54 F.4th 912 (6th Cir. 2022) .....................................................................................16

*E. I. du Pont de Nemours & Co. v. Abbott*,
   144 S. Ct. 16 (2023) ..........................................................................................8, 16

*Esquire Trade & Fin., Inc. v. CBQ, Inc.*,
   562 F.3d 516 (2d Cir. 2009) ......................................................................................11

*Expert Elec., Inc. v. Levine*,
   554 F.2d 1227 (2d Cir. 1977) .....................................................................................9

*Gelboim v. Bank of Am. Corp.*,
   574 U.S. 405 (2015) ..............................................................................................14

*In re Gen. Motors LLC Ignition Switch Litig.*,
   477 F. Supp. 3d 170 (S.D.N.Y. 2020) .............................................................................19

*In re Gen. Motors LLC Ignition Switch Litig.*,
    Nos. 14-MD-2543 (JFM), 14-MC-2543 (JMF),
    2015 WL 3619584 (S.D.N.Y. June 10, 2015) ................................................................4, 20

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
    59 F.4th 55 (3d Cir. 2023) ........................................................................................ *passim*

*Hopkins v. Lee*,
    19 U.S. 109 (1821) ................................................................................................................8

*In re Int. Rate Swaps Antitrust Litig.*,
    351 F. Supp. 3d 698 (S.D.N.Y. 2018) ..................................................................................5

*Interoceanica Corp. v. Sound Pilots, Inc.*,
    107 F.3d 86 (2d Cir. 1997) ................................................................................................6, 7

*In re Korean Air Lines Co., Ltd.*,
    642 F.3d 685 (9th Cir. 2011) ..............................................................................................14

*Leaf v. Refn*,
    742 F. App'x 917 (6th Cir. 2018) ......................................................................................12

*Looper v. Cook Inc.*,
    20 F.4th 387 (7th Cir. 2021) ..............................................................................................17

*Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*,
    779 F.3d 102 (2d Cir. 2015) ................................................................................................5

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ..............................................................................................................4

*Montana v. United States*,
    440 U.S. 147 (1979) .........................................................................................................9, 13

*In re Nat'l Prescription Opiate Litig.*,
    956 F.3d 838 (6th Cir. 2020) ..................................................................................15, 16, 17

*Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*,
    571 F.3d 299 (3d Cir. 2009) ..............................................................................................11

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) ..............................................................................................................6

*Nolles v. State Comm. for Reorganization of Sch. Districts*,
    524 F.3d 892 (8th Cir. 2008) ................................................................................................5

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ............................................................................................20

*Rezzonico v. H & R Block, Inc.*,
    182 F.3d 144 (2d Cir. 1999)..................................................................................5

*Richards v. Jefferson Cnty., Ala.*,
    517 U.S. 793 (1996)...........................................................................................5

*S. Cent. Bell Tel. Co.* v. *Alabama*
    526 U.S. 160 (1999)..........................................................................................12

*Sacerdote v. Cammack Larhette Advisors, LLC*,
    939 F.3d 498 (2d Cir. 2019).....................................................................9, 10, 11

*Smith v. Bayer Corp.*,
    564 U.S. 299 (2011)..........................................................................................20

*Soules v. Connecticut*,
    882 F.3d 52 (2d Cir. 2018)..................................................................................6

*Steinhardt v. UBS Sec. LLC*,
    No. 09-CV-1438(ARR)(RER), 2010 WL 11538536 (E.D.N.Y. Mar. 19, 2010) ...................12

*Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het
    Kapitaal Van Saybolt Int'l B.V. v. Schreiber*,
    327 F.3d 173 (2d Cir. 2003)...............................................................................11

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
    37 F.4th 1078 (5th Cir. 2022) ............................................................................13

*Taylor v. Sturgell*,
    553 U.S. 880 (2008)..................................................................................*passim*

*In re TMI Litig.*,
    193 F.3d 613 (3d Cir. 1999).................................................................14, 15, 16

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002)..........................................................................5, 6

*Walsh v. Cmty. Health Ctr. of Richmond, Inc.*,
    No. 21-CV-3094(ARR)(TAM), 2022 WL 4539264 (E.D.N.Y. Sept. 28, 2022).....................9

**Statutes**

28 U.S.C. § 1407...................................................................................................14

Fed. R. Civ. P. 56............................................................................................1, 20

Sarah Stokes, individually and as general guardian of K.G., Michelle Phippen, individually and as general guardian of P.P. and L.A., Juan Bordoy, individually, and Mary Elin Arce, individually and as mother of J.B., Alisha Day, individually and as general guardian of A.D., and Jessica Mota, individually and as general guardian of M.M. (collectively, "the Mota Plaintiffs"), respond to the Court's January 16, 2024 Order to Show Cause, Dkt. 1394.  The Mota children suffer from attention deficit hyperactivity-disorder ("ADHD"), and the Mota Plaintiffs' individual actions should not be dismissed because they have retained their own expert who offers admissible opinion testimony that meets their burden to prove general causation.  They are prepared to disclose their expert and serve her report as soon as today, or as expeditiously as the Court prefers. As even Defendants appear to agree, the Mota Plaintiffs are not bound by this Court's Rule 702 decision because they were not litigants with Member Cases at the time it was entered.  *See* Dkt. 1393 at 2.  The narrow exceptions to non-party preclusion do not apply.  A contrary conclusion would be unprecedented and disregard fundamental due process rights.  *See generally Taylor v. Sturgell*, 553 U.S. 880 (2008).  The Mota Plaintiffs are entitled to make and cite their own record to oppose summary judgment, Fed. R. Civ. P. 56(c)(1)(A), and are prepared to immediately submit admissible expert evidence that acetaminophen causes ADHD.

## BACKGROUND

On October 5, 2022, the Judicial Panel on Multidistrict Litigation ("JPML") consolidated all federal district court cases in this multidistrict litigation ("MDL") that arose out of the same operative set of allegations: plaintiff mothers' prenatal use of acetaminophen caused their plaintiff children to develop autism spectrum disorder ("ASD"), ADHD, or both.  Dkt. 1.  Pursuant to its authority to manage pretrial proceedings, the Court issued various case management orders.  On October 18, 2022, the Court issued an order that, among other things, ensured "[n]o action taken [in the MDL] shall have the effect of making any person, firm, or corporation a party to any action

in which the person or entity has not been named, served, or added" and directed the Clerk to "maintain a separate docket for each of the Member Cases." Dkt. 11 at 1–2. On November 3, 2022, the Court adopted plaintiffs' proposed leadership structure and charged Lead Counsel "with acting for all plaintiffs—either personally or by coordinating the efforts of others." Dkt. 62 at 1.

On December 2, 2022, the Court authorized "direct filing" "[t]o eliminate delays associated with the transfer to this Court . . . and to promote judicial efficiency." Dkt. 238 at 1. The direct-filing order stated: "Each case filed directly in the MDL that emanates from a district outside the Southern District of New York will be filed in the MDL for pretrial proceedings only[.]" *Id.* at 3. The order authorizes "[a]ny plaintiff whose case would be subject to transfer" to direct file in the MDL. *Id.* at 1. It then affords both sides fourteen days to object "to the inclusion of the case in the MDL." *Id.* at 4. Paragraph 10 of the Court's direct filing order provides that "Defendants reserve all rights to move to dismiss any directly filed individual complaint under Rule 12." *Id.* at 7.

Plaintiffs filed Master Complaints on December 16, 2022 and Amended Master Complaints on July 25, 2023. Both sets of Master Complaints state:

> "[T]he [M]aster [C]omplaint is not meant to be a pleading with legal effect but only an administrative summary of the claims brought by all the plaintiffs." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015). Consistent with this principle, the First Amended Master Complaint is not an operative pleading, does not necessarily include all claims asserted in all the actions in this multidistrict litigation ("MDL"), and is not intended to merge for any purpose the separate actions in this MDL. . . . A Short Form Complaint is the operative pleading for any individual action, and it may incorporate by reference any or all of this First Amended Master Complaint and the First Amended Master Complaint against [defendants].

Dkt. 276 at 2; Dkt. 277 at 3; Dkt. 773 at 3, Dkt. 774 at 2.

On January 9, 2023, the Court established a "common benefit fund," acknowledging that

"[t]his MDL litigation is comprised of many individual actions," but "[s]ome of the work performed . . . will accrue to the benefit of all or most plaintiffs in the MDL." Dkt. 323 at 1. The Court noted that "[c]ommon benefit work does not include time spent on developing or processing individual issues in any case." *Id.* at 5.

On February 1, 2023, the Court set forth "the schedule for fact and expert discovery and for Rule 702 proceedings on the issue of general causation." Dkt. 391 at 1. The Court permitted "each side (plaintiffs and defendants)…to disclos[e]…eight experts." *Id.* at 4 (emphasis removed). On August 16, 2023, the Court issued an order regarding "master answers." Dkt. 841 at 1. It ordered each plaintiff to file "an amended [short-form complaint] on their individual member case docket." *Id.* at 2.

On December 18, 2023, the Court issued an order excluding plaintiffs' five general causation experts ("December 18 Order"). Dkt. 1381. On January 16, 2024, the Court issued an order requiring plaintiffs to show cause "why final judgment under Rule 56 should not be entered in each Member Case of the MDL in which the SFC was served on or before January 11, 2024." Dkt. 1394 at 1.

The Mota Plaintiffs direct filed their cases after the December 18 Order and allege that the Mota children suffer from ADHD because their mothers ingested acetaminophen while pregnant. They are plainly within the scope of the JPML's consolidation order. *See* Dkt. 1. The Mota Plaintiffs do not have a special relationship with plaintiffs who filed earlier Member Cases. Indeed, the Mota Plaintiffs do not even know each other. Having reviewed the December 18 Order through their counsel, the Mota Plaintiffs do not wish to use the opinion testimony of any of the excluded experts. They have retained their own expert and are prepared to immediately produce her report demonstrating that prenatal use of acetaminophen causes ADHD in children at a

population level, *i.e.*, that the Mota Plaintiffs can satisfy their burden to show general causation.

## ARGUMENT

I.   **THE MOTA PLAINTIFFS HAVE A DUE PROCESS RIGHT TO OPPOSE SUMMARY JUDGMENT WITH THEIR OWN EVIDENCE OF GENERAL CAUSATION.**

The Mota Plaintiffs retain their due process rights as litigants in an MDL.  Because they were not even plaintiffs when the December 18 Order issued, they clearly were not parties to any action it applied to.  Under black-letter law, the law of the case and *res judicata* doctrines cannot apply to the Mota Plaintiffs' claims, both because the necessary elements of those doctrines are not met and, independently, because none of the exceptions to the common-law mutuality requirement are satisfied.  The Court's case management orders do not change this conclusion, and any interests in efficiency must yield to the Mota Plaintiffs' substantive rights.

### A. The Mota Plaintiffs Are Entitled to Build and Rely On Their Own Summary Judgment Record.

Each party to his or her own civil action has a "fundamental" due process right to "be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  Litigants who "never had a chance to present their evidence and arguments on the claim" cannot be estopped from doing so even where "one or more existing adjudications of the identical issue . . . stand squarely against their position." *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971).  It does not matter that respecting the separateness of each individual action might "increase the risk of an individual Plaintiff sitting on the sidelines for a period of months or years, and then seeking to force defendants to relitigate issues that already have been decided and to repeat activities that already have occurred . . . that is the price that must be paid to ensure that the due process rights of individual Plaintiffs are not trampled in the name of efficiency." *In re Gen. Motors LLC Ignition*

*Switch Litig.*, Nos. 14-MD-2543 (JFM), 14-MC-2543 (JMF), 2015 WL 3619584, at *11 (S.D.N.Y. June 10, 2015) ("*Gen. Motors I*") (cleaned up and internal quotations and citation omitted).

Only if a litigant *already* has had a meaningful opportunity to be heard in a prior action can the twin doctrines of law of the case or *res judicata* bar re-litigation in a subsequent action. *Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 148 (2d Cir. 1999). Both doctrines are affirmative defenses typically governed by state law, *Taylor*, 553 U.S. at 891 n.4, 907, though the Due Process Clause provides a federal overlay that narrows their controlling force where state law is too sweeping. *Nolles v. State Comm. for Reorganization of Sch. Districts*, 524 F.3d 892, 902 (8th Cir. 2008); *see also Richards v. Jefferson Cnty., Ala.*, 517 U.S. 793, 797 (1996). The "law of the case" doctrine "holds 'that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages *in the same case*,' unless 'cogent' and 'compelling' reasons militate otherwise." *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) (emphasis added, internal citations omitted). "The law of the case doctrine cannot be applied across distinct actions in [a] multidistrict proceeding." *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 61 (3d Cir. 2023); *see also In re Int. Rate Swaps Antitrust Litig.*, 351 F. Supp. 3d 698, 703 (S.D.N.Y. 2018) ("Although trueEX's complaint has been consolidated with these earlier cases for pretrial supervision in this MDL, it is formally a separate case. The law of the case doctrine thus does not apply here.").

"The term *res judicata*, which means essentially that the matter in controversy has already been adjudicated, encompasses two significantly different doctrines: claim preclusion and issue preclusion." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 107 (2d Cir. 2015). "Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the *very same claim*, whether or not relitigation of the claim raises the same issues as

the earlier suit.'" *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001) (emphasis added)); *see also Atticus Ltd. Liab. Co. v. Dramatic Publ'g Co.*, No. 22CV10147 (DLC), 2023 WL 3135745, at *8 (S.D.N.Y. Apr. 27, 2023) (Cote, J.) (citing *Soules v. Connecticut*, 882 F.3d 52, 55 (2d Cir. 2018)).

"Issue preclusion . . . bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892 (quoting *New Hampshire*, 532 U.S. at 748–49). A party is collaterally estopped from raising an issue in a proceeding if: (1) the identical issue was raised in a previous proceeding; (2) the issue was 'actually litigated and decided' in the previous proceeding; (3) the party had a 'full and fair opportunity' to litigate the issue; and (4) the resolution of the issue was 'necessary to support a valid and final judgment on the merits.'" *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997) (quoting *Cent. Hudson Gas & Elec. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)). "The first prong requires that the issue decided in the earlier case and the issue to which [the party] seeks to give preclusive effect be identical." *Bifolck v. Philip Morris USA Inc.*, 936 F.3d 74, 80–81 (2d Cir. 2019).

The Mota Plaintiffs did not even have Member Cases until after December 18, 2023, so they plainly were not parties to any prior proceedings against defendants. Even without considering the mutuality requirement (or its inapplicable exceptions), none of the doctrines for preclusion can apply. The law of the case doctrine applies to rulings "in the same case," *Quintieri*, 306 F.3d at 1225, which definitionally excludes cases such as the Mota Plaintiffs' actions that post-date the order in question. Similarly, claim preclusion bars "successive litigation of the *very same claim*," *Taylor*, 553 U.S. at 892 (emphasis added), which once again cannot possibly apply

to the Mota Plaintiffs.  They claim that the named defendants caused *their children* to develop ADHD.  Those claims are similar to, but not *the same* as, the ones lodged by prior plaintiffs who had Member Cases when this Court issued the December 18 Order.

Nor is issue preclusion applicable for two independent reasons.  First, issue preclusion is only possible where "the issue decided in the earlier case and the issue to which the [defendants here] seek[] to give preclusive effect [are] identical." *Bifolck*, 936 F.3d at 80–81.  The issue the Court decided in the December 18 Order is whether five particular experts offered admissible testimony on general causation.  The Court most certainly did not decide that *no* expert, such as the Mota Plaintiffs' expert, could offer admissible testimony.[1]  That distinct issue has never been adjudicated, finally or otherwise.  Second, issue preclusion only applies where its resolution is necessary to support a final judgment.  *Interoceanica Corp.*, 107 F.3d at 91.  There are no final judgments in *any* Member Case, so of course no final judgments were entered before the Mota Plaintiffs filed their individual actions.

Even if the Court disagrees, the Mota Plaintiffs have their own actions, and are undisputedly not parties to any other Member Cases.  So the only way to apply issue preclusion to their cases would be to identify an exception to the mutuality requirement, holding them bound to the litigation outcome of plaintiffs who have already litigated the admissibility of expert testimony.  None of the recognized exceptions to mutuality remotely applies.

At common law, there were no exceptions at all.  A threshold requirement for the

---

[1] Issue preclusion would thus bar even a plaintiff who submitted the five excluded experts from offering admissible testimony from a different expert.  The Court could, however, wield its discretion to prevent such a plaintiff from making a second attempt to meet her burden of proof.  The fundamental due process right to be heard does not guarantee a right to be heard over and again.  But there is no discretion to block the Mota Plaintiffs' due process right to make their one and only attempt to satisfy their burden of proof.  Even the Defendants appear to concede the point, requesting (without satisfying a single *Nken* factor) that the Court stay the Mota Plaintiffs' actions rather than enter judgment against them.  Dkt. 1393 at 2.

invocation of any preclusion doctrine was "mutuality of parties: A prior judgment prevented only the same parties from relitigating settled issues in a new case between them." *E. I. du Pont de Nemours & Co. v. Abbott*, 144 S. Ct. 16, 16–17 (2023) (Thomas, J., dissenting from denial of certiorari) (mem.) (citing *Hopkins v. Lee*, 19 U.S. 109, 113 (1821); *Deery v. Cray*, 72 U.S. 795, 803 (1867)).  Over time, federal courts slightly relaxed the common law's unyielding mutuality requirement to better accommodate interests in finality.  Nonetheless, the narrow carveouts from the common-law regime are strictly applied to ensure the fundamental fairness due process guarantees.

        1.        Binding Precedent Authorizes Only Six Inapplicable Exceptions to the Mutuality Requirement.

The Supreme Court has authorized six narrow, exclusive exceptions to the rule against nonparty preclusion: (1) an agreement to be bound; (2) a pre-existing, substantive legal relationship between the nonparty and the party to the judgment; (3) where the interests of the nonparty were adequately represented by the prior party; (4) where the nonparty assumed control of the prior litigation; (5) where the nonparty is acting as a proxy, agent, or designated representative of the party bound by the judgment; and (6) a statutory scheme—such as bankruptcy or probate proceedings—that both expressly forecloses successive litigation by nonlitigants and comports with due process.  *Taylor,* 553 U.S. at 893–95.

The facts of *Taylor* are instructive.  A plaintiff sued the Federal Aviation Administration seeking certain documents pursuant to a Freedom of Information Act ("FOIA") request and lost at the Tenth Circuit.  *Id.* at 885–87.  Less than a month after the judgment, the plaintiff's friend filed a FOIA request seeking the same documents, used discovery obtained by the first plaintiff to bolster his claims, retained the same counsel, and argued two points the Tenth Circuit noted the

first plaintiff had failed to raise.  *Id.* at 887–88.  The district and appellate courts found that the second plaintiff's suit was precluded based on the "virtual representation" doctrine.  *Id.* at 890.

The Supreme Court unanimously reversed, rejected the broad notion of "virtual representation," and re-emphasized that "[a] person who was not a party to a suit generally has not had a 'full and fair opportunity to litigate' the claims and issues settled in that suit."  *Id.* at 892 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).  The Court made clear that the exceptions to the mutuality analysis are focused on the relationship between *the parties* and *not* the relationship between the parties and shared counsel.  *See generally Taylor*, 553 U.S. at 894 (cleaned up, emphasis added) (finding a variety of "substantive legal relationships between *the person to be bound* and *a party to the judgment*" may justify preclusion); *Sacerdote v. Cammack Larhette Advisors, LLC*, 939 F.3d 498, 506 (2d Cir. 2019) (emphasis added) ("In the context of claim preclusion, if *a party* to an action is found to be in privity with *a party* to a previous action, then the 'privity is bound with respect to all the issues that were raised or could have been raised in the previous lawsuit.'"); *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977) (similar); *Walsh v. Cmty. Health Ctr. of Richmond, Inc.*, No. 21-CV-3094(ARR)(TAM), 2022 WL 4539264, at *3 (E.D.N.Y. Sept. 28, 2022) ("Accordingly, a nonparty may be bound by a final judgment in a prior action only if there is a relationship constituting 'privity' between the parties.").  None of the six *Taylor* exceptions is even arguably applicable here.

### a.   No Agreement to Be Bound

"[T]his exception applies where, for example, 'separate actions involving the same transaction are brought by different plaintiffs against the same defendant, and all the parties to all the actions agree that the question of the defendant's liability will be definitely determined, one way or the other, in a "test case."'"  *Atticus*, 2023 WL 3135745, at *9 (quoting *Taylor*, 553 U.S.

at 893).  The Mota Plaintiffs in no way agreed to be bound by the Member Cases on file as of the time of the December 18 Order.

> b.   No Pre-Existing, Substantive Legal Relationship

Similarly, there is no colorable argument that the Mota Plaintiffs and the plaintiffs in pre-December 18, 2023 Member Cases were in privity because of a pre-existing, substantive legal relationship.  "[R]elationships qualifying under the second exception include 'preceding and succeeding owners of property, bailee and bailor, and assignee and assignor,' [ ] [and] this exception originated 'as much from the needs of property law as from the values of preclusion by judgment.'"  *Duckett v. Fuller*, 819 F.3d 740, 746 (4th Cir. 2016) (quoting *Taylor*, 553 U.S. at 894).  There is no "property rights-based relationship akin to those recognized in *Taylor*" between the Mota Plaintiffs and the prior plaintiffs.  *Sacerdote*, 939 F.3d at 509; *id.* at 509–10 (rejecting non-party preclusion under this factor when "[n]o property rights were transferred, assigned, or delegated to or from [the parties], and the claims in [the cases] did not concern [the parties'] mutual or successive rights in the same property"); *Briscoe v. City of New Haven*, 654 F.3d 200, 203 (2d Cir. 2011) ("[N]o preexisting 'substantive legal relationship' existed between the [the parties] that is akin to a 'bailee and bailor' or 'assignee and assignor.'").

> c.   No Adequate Representation

"A party's [*i.e.*, an earlier Member Case plaintiff's] representation of a nonparty [*i.e.*, the Mota Plaintiffs] is considered 'adequate' for preclusion purposes 'only if, at a minimum: (1) the interests of the nonparty and her representative are aligned; and (2) either the party in the first suit understood herself to be acting in a representative capacity of the nonparty or the original court took care to protect the interests of the nonparty.'"  *Atticus*, 2023 WL 3135745, at *11 (quoting *Sacerdote*, 939 F.3d at 510).  "The Supreme Court has described this exception as applying only

10

in 'certain limited circumstances' when the nonparty is 'adequately represented by someone with the same interests *who was a party to the suit*,' such as class actions and suits brought by trustees, guardians, and other fiduciaries." *Sacerdote*, 939 F.3d at 510 (emphasis added) (quoting *Taylor*, 553 U.S. at 894–95); *Esquire Trade & Fin., Inc. v. CBQ, Inc.*, 562 F.3d 516, 521 (2d Cir. 2009) (same).  Consolidated personal injury actions are obviously not akin to a class action.  Unlike in the class context, an MDL court has never appointed "a lead personal injury plaintiff," complete with an analysis of whether she will adequately represent the class.  No individual personal injury plaintiff assumes fiduciary duties to other plaintiffs, including the duty not to negotiate a settlement that favors her.  There is similarly no notice that a class-like action is being formed *or* any opportunity to opt out and litigate individually, as assured under Federal Rule of Civil Procedure 23(b)(3). *See Taylor*, 553 U.S. at 900.  With adequate procedural safeguards, absent class members *can* be bound by a prior judgment because the absent class member of a certified class *becomes a party* to the proceeding.  *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 313 (3d Cir. 2009).

The other enumerated relationships that create adequate representation—trustees, guardians, and fiduciaries—further confirm that earlier-filed plaintiffs did not provide "adequate representation" for the Mota Plaintiffs.  *Taylor*, 553 U.S. at 893–95.  In those sorts of relationships, the prior party—as a trustee, guardian, or fiduciary—brings the claim to vindicate the non-party's rights; the suit may be in the name of the trustee, guardian, or fiduciary, but she sued to recover the *beneficiary's* interest.  *See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapital Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 185 (2d Cir. 2003) ("Preclusion is thus found to apply against a person who, although not party to the previous litigation, served in a representative capacity to direct that litigation.").

11

Here, the prior plaintiffs were in no way suing to vindicate the Mota Plaintiffs' interests but rather asserted their own, unique, personal injury claims against defendants for their own damages suffered as a result of prenatal use of acetaminophen.  Contrast that with a tangible example where this factor could apply: Jessica Mota concedes that she is the *guardian* of her child, M.M.  If Jessica Mota's action on M.M.'s behalf results in an adverse final judgment, she agrees that *M.M.* is in a special relationship with her such that M.M. might be unable to relitigate issues necessarily decided in Jessica Mota's case.

The fact that the Mota Plaintiffs share common *counsel* with some of the prior plaintiffs is of no moment.  The analysis of this factor focuses on the relationship between the *parties*, and the fact that (some of) the Mota Plaintiffs have hired the same lawyer as earlier plaintiffs "created no special representational relationship between the earlier and [Mota] [P]laintiffs." *S. Cent. Bell Tel. Co.* v. *Alabama*, 526 U.S. 160, 168 (1999).  *Taylor* settles the issue.  The Supreme Court rejected the appellate court's holding that there was "adequate representation" because the second plaintiff hired the same counsel and the first party had a strong incentive to litigate.  *See Taylor*, 553 U.S. at 896–98.  The Court relied on its precedent in *South Central*, which found that application of *res judicata* violated due process even when the nonparty had notice of the original suit *and* engaged the same lawyers.  *See Taylor*, 553 U.S. at 897 (citing *S. Cent.*, 526 U.S. at 167–68).  That common counsel was duty bound to zealously advocate for the prior plaintiffs as much as the Mota Plaintiffs does not authorize estoppel.  *See Taylor*, 553 U.S. at 898; *see also Leaf v. Refn*, 742 F. App'x 917, 925 (6th Cir. 2018) (explaining that shared counsel does not create privity between parties under *Taylor*); *Steinhardt v. UBS Sec. LLC*, No. 09-CV-1438(ARR)(RER), 2010 WL 11538536, at *4 (E.D.N.Y. Mar. 19, 2010) (rejecting non-mutual claim preclusion when parties shared an attorney).

### d.   No Assumption of Control Over the Prior Litigation

There is no viable argument that the Mota Plaintiffs exercised control over prior plaintiffs' Member Cases.  "A finding of assumed control 'requires that a person have effective choice as to the legal theories and proofs to be advanced in [sic] behalf of the party to the action and have control over the opportunity to obtain review.'"  *Atticus,* 2023 WL 3135745, at *12 (quoting *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1087 (5th Cir. 2022)).  Here, the Mota Plaintiffs did not in any way control the earlier litigated Member Cases.  They control their own lawsuits alone.

### e.   Not Agents, Proxies, or Designated Representatives of Prior Member Plaintiffs

This factor is aimed at precluding losing parties from using new plaintiffs as their "foil."  *Duckett*, 819 F.3d at 746; *see Montana*, 440 U.S. at 155 (finding privity when former party—the United States—required the suit to be filed, reviewed the complaint, directed the appeal, and submitted an amicus brief).  There is no argument that the prior plaintiffs—who have never communicated with the Mota Plaintiffs (either directly or through attorneys)—are acting as "puppeteers" and controlling the Mota Plaintiffs.  *Duckett*, 819 F.3d at 747.  That is for good reason.  The prior plaintiffs have nothing to gain from the Mota Plaintiffs' actions.  If the Mota Plaintiffs are successful, the prior plaintiffs will not taste that success, as they have no right to any damages the Mota Plaintiffs may recover.

### f.   No Statutory Scheme

Section 1407 certainly does not provide a statutory scheme like "bankruptcy . . . proceedings" that "may expressly foreclose successive litigation by nonlitigants."  *Taylor*, 553 U.S. at 895 (internal quotations and citations omitted).  The consolidation statute is procedural

13

only, and thus cannot affect substantive rights by modifying the background, substantive rules of an affirmative defense such as issue preclusion.

> 2.   Individual Actions in MDLs Are Subject to the Same Rules as Any Other Civil Action.

There is no special, seventh exception to the mutuality requirement applicable to MDLs. Just the opposite is so.  Barring merger, Plaintiffs' cases consolidated in an MDL "retain their separate identities." *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015).[2]  Section 1407 is a procedural provision allowing for "coordinated or consolidated pretrial proceedings" in a single venue, 28 U.S.C. § 1407(a), but "[t]he MDL process 'does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another.'" *Home Depot*, 59 F.4th  at 62  (quoting *In re TMI Litig.*, 193 F.3d 613, 724 (3d Cir. 1999)); *see In re Korean Air Lines Co., Ltd.*, 642 F.3d 685, 700 (9th Cir. 2011) ("Within the context of MDL proceedings, individual cases that are consolidated or coordinated for pretrial purposes remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over.").  Indeed, Section 1407 itself expressly "refers to individual 'actions' . . . not to any monolithic multidistrict 'action' created by transfer." *Gelboim*, 574 U.S. at 413.  As a merely procedural statute, Section 1407 does not create or authorize the creation of any "*substantive* legal relationships" between any individual plaintiffs with individual actions.  *Taylor*, 553 U.S. at 894 (emphasis added).

It follows that "an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case

---

[2] In some instances, parties may elect to file a single "master complaint" that *merges* individual actions, *see Gelboim*, 574 U.S. at 413 n.3. That did not occur in this MDL. Dkt. 773 at 3 ("[T]he First Amended Master Complaint . . . is not intended to merge for any purpose the separate actions in this MDL."); Dkt. 774 at 2 (same).

alone." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 841 (6th Cir. 2020).  An MDL court does "not have the authority to create special rules" to "bind plaintiffs by the findings of previous proceedings in which they were not parties."  *Home Depot*, 59 F.4th at 64 (quoting *TMI*, 193 F.3d at 726).  Applying the same legal rules means that—as in any other case—parties to an individual action consolidated in an MDL have the same rights as parties outside of an MDL to a meaningful opportunity to be heard by building an individual record to oppose summary judgment.  They may only be bound by estoppel where the strict criteria of the doctrines are satisfied.

The Third Circuit's recent decision in *Home Depot* is directly on point and leaves no doubt that MDLs do not enjoy a dispensation from the normal rules of preclusion.  In that case, the MDL court excluded Home Depot's expert testimony based on law of the case and issue preclusion even though Home Depot was not a party to the MDL when the court issued the adverse prior rulings, holding that "Home Depot was bound by rulings issued in this MDL before Home Depot joined it."  *Id.* at 61. The Third Circuit reversed, noting that at the time of the rulings, "Home Depot's only relationship to the litigation was as an absent member of a putative class" and that "[i]t is axiomatic that an unnamed class member is not a party to the class-action litigation before the class is certified."  *Id.* at 63 (internal quotations and citations omitted).  The appellate court determined that Home Depot was not in privity with any parties, and critically, "[g]iven that Home Depot was not a party to the summary judgment proceeding, it is unsurprising that it also lacked the 'full and fair opportunity to litigate' the issue."  *Id.* (quoting *Taylor*, 553 U.S. at 892–93).  The Third Circuit noted:

> The district court has broad authority to structure and manage the MDL proceeding to promote efficiency and avoid unfairness. But it does "not have the authority to create special rules" to "bind plaintiffs by the finding of previous proceedings in which they were not parties, even by a proceeding as thorough as the multidistrict common issues trial."

*Id.* at 64 (quoting *ITMI*, 193 F.3d at 726).

If MDLs pose any controversy at all, it is that later-filed *plaintiffs* can sometimes avail themselves of offensive, non-mutual estoppel to bind *defendants* who litigated and lost against different plaintiffs in earlier actions. Some jurists consider that regime fundamentally unfair. *See E. I. du Pont*, 144 S. Ct. at 17 (Thomas, J., dissenting from denial of certiorari) (mem.) ("[E]xpansive use of nonmutual offensive collateral estoppel in the MDL context raises serious due process concerns."); *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 936 (6th Cir. 2022) (Batchelder, J., dissenting in part) ("I would hold that, in mass-tort multidistrict litigation, fundamental notions of due process require an additional safeguard before a court can issue a collateral estoppel order . . . ."). The reason for that concern stems from a lack of symmetry: as Justice Thomas noted, it is settled law that MDL *defendants* cannot invoke estoppel against newly filed *plaintiffs*, even if those defendants litigated similar or identical issues successfully against *other* plaintiffs. *E. I. du Pont*, 144 S. Ct. at 18 (Thomas, J., dissenting from denial of certiorari) (mem.) (citing *Blonder-Tongue*, 402 U.S. at 329). No appellate court has ever sustained a contrary result.

Applying black-letter law, the Mota Plaintiffs are entitled to present their evidence of general causation. And this Court must analyze whether to grant summary judgment against them based on the record in their "case[s] alone," irrespective of whether other plaintiffs were unable to meet their burden to prove general causation. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 841.

**B. The Court's Orders Do Not Change the Preclusion Analysis.** [3]

Nothing in this Court's orders, alone or in combination, could or did alter the default: the Mota Plaintiffs have individual actions, with the full panoply of due process rights afforded to individual litigants in every non-consolidated civil action. *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 841.

The direct filing order had no bearing on the Mota Plaintiffs' right to proceed. Such orders are commonplace in MDLs to enhance efficiency. As the Seventh Circuit explained:

> Direct filing eliminates the need for plaintiffs to file their cases in their home jurisdictions (or other valid forums apart from the MDL court) and then wait for their cases to be tagged and later transferred to the MDL transferee court. Instead, once the transferee judge institutes direct filing—typically through an agreed case management order—plaintiffs can file directly in the MDL court, avoiding the delays in the tag-along process. Direct filing can be a useful tool in managing multidistrict litigation because it eliminates the judicial inefficiency that results from two separate clerk's offices having to docket and maintain the same case and three separate courts (the transferor court, the MDL Panel, and the transferee court) having to preside over the same matter.

*Looper v. Cook Inc.*, 20 F.4th 387, 390–91 (7th Cir. 2021) (citing authorities).

The Mota Plaintiffs did not agree to be bound by prior plaintiffs' litigation merely because they direct filed to avoid imposing the "judicial inefficiency" of the tag-and-transfer process. *Id.* The Court's direct filing order authorizes "any plaintiffs whose *case would be subject to transfer*" to direct file in the MDL. Dkt. 238 at 1 (emphasis added). It then affords both sides fourteen days to object "to the inclusion of the case in the MDL." *Id.* at 4. By its plain terms, the objection could only raise the argument that a particular action did *not* warrant "inclusion" in the MDL because the claims were outside of the scope of the JPML's consolidation order. *See* Dkt. 1 at 1–2 (limiting

---

[3] The Court's January 17, 2024 Order, Dkt. 1395, mentioned several orders, all of which are addressed in this section.

consolidation and transfer to cases alleging that "as a result of prenatal exposure to acetaminophen, [plaintiffs'] children developed autism spectrum disorder (ASD), attention deficit hyperactivity disorder (ADHD), or both").  The direct filing order nowhere states or even suggests that a direct-filing plaintiff's failure to object to inclusion in the MDL was tantamount to waiving the individuality of that plaintiff's action.  The Mota Plaintiffs have no colorable objection to inclusion in the MDL, which was a precondition to direct filing in the first place.

There is no other language in the direct filing order stating or even intimating that a plaintiff waives her due process right to build her own record by directly filing in the MDL.  To the contrary, the order makes clear that the parties preserve their individual, substantive legal arguments.  For instance, paragraph 10 of the Court's direct filing order provides that "Defendants reserve all rights to move to dismiss any directly filed individual complaint under Rule 12," which includes moving to dismiss due to the affirmative defense of collateral estoppel.  Dkt. 238 at 7.  By implication, if Defendants can move to dismiss a plaintiff's action based on collateral estoppel, a direct-filing plaintiff maintained her right to oppose the motion.  In short, the Mota Plaintiffs have no grounds to object and thus do not object to being before this MDL Court.  They emphatically object to having their individual actions determined by the record applicable to other MDL plaintiffs, all of whom litigated before the Mota Plaintiffs even filed their lawsuits.

The Court's appointment of plaintiffs' leadership counsel similarly does not alter the Mota Plaintiffs' due process rights or bind them to prior plaintiffs' judgments.  *See* Dkt. 62.  As a threshold matter, the Mota Plaintiffs *were not plaintiffs* until after December 18, 2023.  So the appointment order's charge directing leadership to act "for all plaintiffs" did not cover the Mota Plaintiffs.  Dkt. 62 at 1.  Even putting that to one side, if mere appointment of leadership counsel were enough to create estoppel, then estoppel would be an automatic feature of every MDL for

any state and federal plaintiff.  Based on that logic, plaintiffs' claims pending in state court would be estopped because the appointment of MDL leadership transformed earlier-filed plaintiffs into representatives of "all plaintiffs" with no distinction as to where those later plaintiffs' claims were filed.  Yet no court, ever, has held or even hinted that appointment of MDL leadership—with obligations that run to all plaintiffs—somehow converts individual, earlier filed plaintiffs into guardians, trustees, or fiduciaries in privity with later filed plaintiffs.[4]  The scope of Leadership's responsibilities could not and did not extinguish absent parties' rights.

The Court's creation of a common benefit fund similarly does not satisfy any of the six *Taylor* factors.  *See* Dkt. 323.  Like the establishment of leadership, the creation of a common benefit fund is a procedural tool in multidistrict litigation proceedings.  *See generally In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 174 (S.D.N.Y. 2020).  It is invoked to avoid free riding by each plaintiff's individual counsel and to ensure that attorneys who do work that benefits all plaintiffs are compensated for their efforts.  Nothing about the existence of common-benefit funds in general or this Court's common-benefit order in particular suggests that the potential beneficiaries of common-benefit work—such as the Mota Plaintiffs—accept that benefit at the price of being bound by rulings in earlier-filed actions.  Once more, since common-benefit orders are de rigueur in MDLs, the notion that such orders authorize estoppel of later-filed cases would mean that estoppel is virtually automatic.  The universal weight of appellate authority is to the contrary.  *See, e.g.*, *Home Depot*, 59 F.4th at 64.

Finally, the parties' pleadings did not in any way disturb Plaintiffs' due process rights.  Plaintiffs filed Master Complaints but made clear that those were strictly administrative

---

[4] Although the privity analysis is focused on whether the earlier *party* is a fiduciary of the later party, at least one MDL court has also explained that *leadership counsel* is not a "'fiduciary' in the traditional sense of the word."  *Casey v. Denton*, No. 3:17-CV-00521, 2018 WL 4205153, at *6 (S.D. Ill. Sept. 4, 2018).

documents; that each plaintiff's individual short form complaint was the operative pleading for that individual action.  *See* Dkt. 276 at 2; Dkt. 277 at 3; Dkt. 773 at 3; Dkt. 774 at 2.  That the Court ordered each Master Answer to be deemed the answer to each plaintiff's short form complaint twenty-one days after a plaintiff's individual filing further confirms that each plaintiff's case retained its individual status, with no privity between plaintiffs across multiple actions.

### C.  Judicial Efficiency Does Not Trump Plaintiffs' Due Process Rights.

The Mota Plaintiffs are sensitive to the "fundamental tension embedded in MDLs—between, on the one hand, facilitating effective motion practice, discovery, and resolution of *all* claims present in the MDL while, on the other hand, acknowledging (for purposes of eventual remand and otherwise) the individual character of all of the actions before an MDL Court."  *Gen. Motors I*, 2015 WL 3619584, at *6 (emphasis in original).  But in "administering a[n] MDL proceeding, due process and fundamental fairness may not be sacrificed to provide assembly-line justice."  *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1250 (9th Cir. 2006).  In assessing preclusion issues in the face of the threat of serial litigation, the Supreme Court has been clear that "our legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs . . . . [And] the right approach (except in the discrete categories of cases we have recognized) [does not] lie[] in binding nonparties to a judgment."  *Smith v. Bayer Corp.*, 564 U.S. 299, 317 (2011); *see generally Home Depot*, 59 F.4 at 65–66 (discussing mechanisms by which MDL judges can serve judicial economy and respect due process and that an MDL court "may rely on its prior decisions as persuasive, and demand good reasons to change its mind").  To minimize any tension, the Mota Plaintiffs are prepared to immediately produce their evidence of general causation and to submit to any streamlined procedures the Court deems appropriate in view of its familiarity with the background facts associated with this MDL.

20

**CONCLUSION**

As set forth herein, the Mota Plaintiffs are entitled to make and rely on their own record to oppose summary judgment, Fed. R. Civ. P. 56(c)(1)(A).  Nothing that has transpired in this MDL deprived the Mota Plaintiffs of their due process rights or barred them from pursuing their claims. The Mota Plaintiffs are prepared to immediately proceed with their cases and to submit admissible expert evidence that acetaminophen can cause attention deficit hyperactivity-disorder.

Dated: February 1, 2024

Respectfully submitted,

_/s/ Ashley C. Keller_

**KELLER POSTMAN LLC**
Ashley C. Keller – *Pro Hac Vice*
150 N. Riverside Plaza Suite 4100
Chicago, IL 60606
Phone: (312) 741-5220
Fax: (312) 971-3502
ack@kellerpostman.com
***Counsel for Sarah Stokes, individually and as general guardian of K.G., Michelle Phippen, individually and as general guardian of P.P. and L.A., and Jessica Mota, individually and as general guardian of M.M.***

_/s/ Brett A. Emison_

**LANGDON & EMISON, LLC**
Brett A. Emison (Pro Hac Vice)
911 Main Street, P.O. Box 220
Lexington, MO 64067
Phone: (660) 259-7199
Fax: (660) 259-4571
brett@lelaw.com
***Counsel for Alisha Day, individually and as general guardian of A.D.***

_/s/ Daniel C. Burke_

**BERNSTEIN LIEBHARD LLP**
Daniel C. Burke, Esq.
10 East 40th Street
New York, New York 10016
Phone: (212) 779-1414
dburke@bernlieb.com
***Counsel for Juan Bordoy, individually, and Mary Elin Arce, individually and as mother of J.B.***