**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: Acetaminophen – ASD-ADHD Products Liability Litigation** | **22md3043 (DLC)** |
| **This Document Related To: All Cases** | |

## MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS AGAINST ASHLEY KELLER

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 3

I. Keller Postman Has Zealously Pursued Its Clients' Acetaminophen Claims Since 2022 .......................................................................................................... 3

II. This Court's Protective Order Applies Only to Documents Produced in the MDL. .......... 4

III. Until February 2026, Kenvue Deemed the MDL Discovery Reproduced in All of Keller Postman's State Cases ........................................................................ 4

IV. Confidential Information Used in the Florida Filing Was Never Disclosed Publicly and Was Promptly Withdrawn. ...................................................................... 5

V. No Confidential Information Was Used in the Texas Filing. ............................................ 9

VI. Mr. Keller Supervises the Acetaminophen Litigation But Was Not Involved in the Filings. ................................................................................................... 10

ARGUMENT ................................................................................................... 12

I. Mr. Keller Did Not Violate the Protective Order at All, and the Protective Order Does Not Cover Most of Kenvue's Alleged Misconduct. ............................... 12

II. Sanctions Are Not Warranted Under Rule 37 ......................................................... 15

A. Rule 37(b)(2) Does Not Cover Protective Orders ............................................. 15

B. Kenvue Has Not Shown That Mr. Keller Disregarded a Clear Order. ................ 16

C. Any Failure to Obey the Protective Order Does Not Justify Monetary Sanctions. ...... 18

D. Any Rule 37(b)(2)(C) Sanctions Must Be Limited to Expenses "Caused by the Failure" to Obey. .............................................................................. 22

E. Kenvue's Failure to Comply With Procedural Rules Renders Any Sanctions Unjust. ............................................................................................. 23

III. There Is No Evidence of Bad Faith and No Exception Applies to Justify Sanctions Under the Court's Inherent Authority. ........................................................ 24

CONCLUSION ................................................................................................. 26

LOCAL RULE 7.1(c) CERTIFICATION ................................................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdou v. Mahany & Ertl, LLC*,
No. 19-cv-1824 (JHR) (RWL), 2024 WL 3503046 (S.D.N.Y. June 11, 2024)................22, 23

*Barry White Fam. Tr. U/A/D v. Oliver*,
No. 24cv7509 (DLC), 2025 WL 3022412 (S.D.N.Y. Oct. 29, 2025)................................20, 21

*Browning Debenture Holders' Comm. v. DASA Corp.*,
560 F.2d 1078 (2d Cir. 1977)...........................................................................................24

*Camreta v. Greene*,
563 U.S. 692 (2011)..........................................................................................................15

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991)............................................................................................................24

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*,
602 F.2d 1062 (2d Cir. 1979)............................................................................................19

*Cuno Inc. v. Pall Corp.*,
116 F.R.D. 279 (E.D.N.Y. 1987) .....................................................................................23

*Design Strategy, Inc. v. Davis*,
469 F.3d 284 (2d Cir. 2006)..............................................................................................16

*United States ex rel. Eisenstein v. City of N.Y.*,
540 F.3d 94 (2d Cir. 2008)................................................................................................16

*George v. Pro. Disposables Int'l, Inc.*,
No. 15-CV-3385 (RA), 2018 WL 2148762 (S.D.N.Y. May 1, 2018) ...............................25

*Hunt v. Enzo Biochem, Inc.*,
No. 06 CIV. 170(SAS), 2011 WL 4840713 (S.D.N.Y. Oct. 12, 2011) ..............................22

*Jay v. Spectrum Brand Holdings, Inc.*,
No. 13 Civ. 8137(LTS)(DF), 2015 WL 6437581 (S.D.N.Y. Oct. 20, 2015)................12, 16

*Jenkins v. Toyota, Japan*,
106 F.R.D. 185 (W.D.N.Y. 1984)......................................................................................24

*Lipscher v. LRP Publ'ns, Inc.*,
266 F.3d 1305 (11th Cir. 2001) ........................................................................................15

ii

*Minskoff v. Mendoza*,
   797 F. Supp. 3d 238 (E.D.N.Y. 2025) .......................................................................21

*Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*,
   339 F.3d 180 (3d Cir. 2003)........................................................................................13

*New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*,
   No. 1:20-cv-02327 (MKV), 2022 WL 874783 (S.D.N.Y. Mar. 24, 2022)..............14

*Next Invs., LLC v. Bank of China*,
   12 F.4th 119 (2d Cir. 2021) ........................................................................................18

*Palmer v. Simon's Agency, Inc.*,
   833 F. App'x 838 (2d Cir. 2020) ................................................................................25

*Perez v. Edwards*,
   No. 20-cv-1359, 2023 WL 5935029 (S.D.N.Y. Sept. 12, 2023) .........................16, 18

*In re Plumeri*,
   434 B.R. 315 (S.D.N.Y. 2010) (Cote, J.) ...................................................................24

*Richards v. Kallish*,
   No. 22-cv-9095 (CS) (VR), 2024 WL 180869 (S.D.N.Y. Jan. 17, 2024) ...........21, 23

*Rossbach v. Montefiore Med. Ctr.*,
   81 F.4th 124 (2d Cir. 2023) ...................................................................................24, 25

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
   No. 18-CV-5427 (JSR), 2020 WL 7231095 (S.D.N.Y. Dec. 7, 2020) .....................22

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*,
   685 F.3d 486 (5th Cir. 2012) ......................................................................................16

*United States v. Seltzer*,
   227 F.3d 36 (2d Cir. 2000)...............................................................................24, 25, 26

*Venetian Salami Co. v. Parthenais*,
   554 So. 2d 499 (Fla. 1989)............................................................................................5

*Wolters Kluwer Fin. Servs., Inc. v. Scivantage*,
   564 F.3d 110 (2d Cir. 2009).....................................................................................2, 25

*World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*,
   694 F.3d 155 (2d Cir. 2012)..............................................................................19, 20, 21

**Other Authorities**

*American Heritage Dictionary* (5th ed. 2022)...............................................................17

Fed. R. Civ. P. 26(c) ..................................................................................................................15

Fed. R. Civ. P. 37(b)(2)(A) ...............................................................................10, 15, 16, 23

Fed. R. Civ. P. 37(b)(2)(C) ...........................................................................................10, 19, 23

**INTRODUCTION**

Kenvue seeks sanctions against Ashley Keller for a mistake that was quickly remedied and did not cause the public disclosure of *any* confidential information. Mr. Keller and Keller Postman regret any error and have taken steps to prevent similar ones going forward. But a good-faith lapse by supervised lawyers, against whom Kenvue does not seek sanctions, that is promptly remedied and causes no prejudice does not amount to sanctionable misconduct.

Keller Postman represents a client in Florida state court. In opposing Kenvue's motion to dismiss for want of personal jurisdiction, the firm attached four confidential documents (eleven pages in total) that were produced pursuant to the MDL protective order. The filing was made under seal and was never posted to a public docket to protect Kenvue's confidentiality designations. Although Mr. Keller signed the Florida filing and supervises the attorneys working on the Florida matter, he did not make the filing decision. Other attorneys at Keller Postman did so based on Kenvue's past agreement that discovery from the MDL would be deemed produced in specific state-court venues. Immediately upon learning of Kenvue's objection to the Florida filing, Mr. Keller approved corrective action: Keller Postman moved to permanently strike the filing from the Florida docket. He has also instructed *all* Keller Postman attorneys on this matter, and every other matter that the firm handles, that any agreement with opposing counsel—such as deemed production of prior discovery—must be express, not based on a course of dealing in related matters. Mr. Keller has spoken to the attorneys involved and is confident that the filings were made in good faith, with no intention to risk disclosure of Kenvue's confidential information or to disregard this Court's orders. Kenvue does not argue otherwise.

Keller Postman attorneys worked quickly and collaboratively with Kenvue's counsel to remedy any technical violation, including sharing the motion to strike prior to filing.  The unopposed motion was filed within 48 hours of Keller Postman's first learning of Kenvue's

1

objections. The state court granted the unopposed motion. And the end result is that the filings are permanently deleted from the state-court docket. Kenvue's confidential information was never disclosed. And it never will be as a result of the complained of conduct.

After hearing Kenvue's position on deemed production in Florida, another Keller Postman attorney, not Mr. Keller, asked Kenvue's counsel if it would deem MDL documents produced in Texas ahead of another filing. When Kenvue refused deemed production, that attorney did not use any Kenvue documents in the filing. Instead, he fully redacted all confidential information. No confidential information has been filed or disclosed to anyone (including the Texas court) in that case.

Rule 37 sanctions are not warranted because the rule does not apply by its very terms. Even if it did cover this fact pattern, Kenvue has not shown that Mr. Keller violated the protective order by clear and convincing evidence. Mr. Keller acted as a supervisor, did not approve or even know about the conduct in advance, and took steps to expeditiously cure the improper Florida filing once he learned about it and Kenvue's position. Those steps ensured that Kenvue was not prejudiced in any way. Mr. Keller has already undertaken actions consistent with his supervisory role to prevent this sort of incident from recurring by implementing a new firmwide policy. Simply put, there is no justification for sanctions against Mr. Keller under Rule 37.

Kenvue's request for inherent authority sanctions also fails because, as Kenvue concedes, there is no bad faith. Second Circuit precedent makes clear that bad faith is required to impose *any* sanctions pursuant to the Court's inherent authority in situations precisely like this one. *See Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009) (requiring a showing of bad faith to impose sanctions for improperly filing confidential materials). It is

undisputed that bad faith is required to impose attorneys' fees. The Court should deny Kenvue's motion for sanctions against Ashley Keller in full.

## BACKGROUND[1]

**I.    Keller Postman Has Zealously Pursued Its Clients' Acetaminophen Claims Since 2022.**

On November 29, 2023, this Court reappointed Mr. Keller to serve as Plaintiffs' Co-Lead Counsel and Keller Postman's Ashley Barriere to serve as the chair of the Law & Briefing Committee, and appointed Amanda Hunt to serve as the chair of the Science & Expert Committee. Dkt. 1356. In addition to these leadership roles, Keller Postman is counsel of record in 75 cases that are part of this MDL. Keller Decl. ¶ 2. As this Court remarked at the December 7, 2023 *Daubert* hearing, the MDL plaintiffs "are well represented." Dkt. 1379, Hr'g Tr. 122:25-123:1. That is due in large part to the work of Keller Postman.

Outside of the MDL, Keller Postman also represents clients in state-court actions, including cases in California, Illinois, and Florida. Keller Decl. ¶ 6. Keller Postman also represents the State of Texas in a deceptive trade practice and fraudulent transfer action relating to risks associated with acetaminophen. *Id.* ¶ 7. In each of those cases, Keller Postman attorneys have zealously represented their clients and used their expertise and experience from the MDL in an effort to obtain positive results. In doing so, Keller Postman attorneys have similarly complied with all court orders. *Id.* ¶ 21; Romano Decl. ¶ 6. Keller Postman attorneys have never faced any allegations of misconduct in any state case.

---

[1] The pertinent facts set forth herein are supported by the Declaration of Ashley C. Keller ("Keller Decl."), the Declaration of Roseann R. Romano ("Romano Decl."), the Declaration of John M. Masslon II ("Masslon Decl."), and exhibits, which are being filed contemporaneously with this brief.

**II.    This Court's Protective Order Applies Only to Documents Produced in the MDL.**

Kenvue claims the alleged misconduct relates to "a dozen documents designated Confidential and Highly Confidential *in this MDL*." Mot. at 1 (emphasis added). However, the MDL protective order applies only to those "document[s] . . . produced or disclosed in connection with the above-captioned matter," *i.e.*, the MDL. Dkt. 351, ¶ 1. Only four of the documents at issue were produced in the MDL. Romano Decl. Ex. 1, Production Index. The remaining documents were produced in other courts pursuant to other orders that Kenvue could not and has not asked this Court to interpret or enforce. Kenvue has not produced any documents in this MDL since May 2023. Romano Decl. ¶ 7; *see also id.* Ex. 1, Production Index. The last production ended in Bates number APAP-JJCI-0001708641. *Id.* Ex. 1, Production Index. Any document bearing a higher Bates number was not produced here, but in a state-court action. The table below identifies the four documents at issue produced in this MDL and the eight, shaded in gray, that were not.

|     | Bates Number | Date of Production | Action Produced In |
|-----|--------------|--------------------|--------------------|
| 1.  | APAP-JJCI-0000015607 | March 8, 2023 | MDL |
| 2.  | APAP-JJCI-0000016835 | March 8, 2023 | MDL |
| 3.  | APAP-JJCI-0000034407 | March 8, 2023 | MDL |
| 4.  | APAP-JJCI-0000035030 | March 8, 2023 | MDL |
| 5.  | APAP-JJCI-0001717789 | November 25, 2024 | Davey (CA) |
| 6.  | APAP-JJCI-0001722365 | November 25, 2024 | Davey (CA) |
| 7.  | APAP-JJCI-0001722804 | November 25, 2024 | Davey (CA) |
| 8.  | APAP-JJCI-0001763435 | December 6, 2024 | Davey (CA) |
| 9.  | APAP-JJCI-0001778097 | December 6, 2024 | Davey (CA) |
| 10. | APAP-JJCI-0001831515 | June 23, 2025 | Bellmon (IL) |
| 11. | APAP-JJCI-0001831517 | June 23, 2025 | Bellmon (IL) |
| 12. | BBC0000313 | July 28, 2025 | Bellmon (IL) |

**III.    Until February 2026, Kenvue Deemed the MDL Discovery Reproduced in All of Keller Postman's State Cases.**

Under the MDL protective order, information designated confidential in this MDL may be used in other proceedings as long as "the same discovery has been produced in a 'Related Action.'" Dkt. 351, ¶ 17. This Court's Discovery Coordination Order defines "Related Actions" as "[c]ases

4

asserting APAP Claims" that "have been . . . filed in state courts." Dkt. 382 at 1. Contrary to Kenvue's representations (at 3), a "Related Action" need not adopt this Court's Coordination or Protective Orders. If "[a] Related Action" *does* adopt the "Discovery Coordination Order . . . [it] is referred to as a '*Coordinated Action*.'" Dkt. 382 at 1 (emphasis added). A Coordinated Action is subject to other requirements described in the Discovery Coordination Order; a Related Action is not. *See id.* at 2-9.

Keller Postman has litigated Related Actions, as defined by the Coordination Order, in California and Illinois. Romano Decl. ¶¶ 13-14. In both cases, Kenvue deemed the MDL discovery reproduced for use in those cases without adoption of this Court's Coordination Order. *Id.* Keller Postman opposed entry of the Coordination Order in California because MDL discovery had closed pending entry of final judgment when the case was filed. *Id.* ¶ 13. In Illinois, Kenvue's counsel did not even propose entry of the Coordination Order, apparently relying on Keller Postman's position in the earlier California case. *Id.* ¶ 15.

## IV.   Confidential Information Used in the Florida Filing Was Never Disclosed Publicly and Was Promptly Withdrawn.

Keller Postman filed a third Related Action on behalf of Melissa Guist in Florida on December 15, 2025. *Id.* ¶ 16. Kenvue and co-defendants Kenvue Inc. and Johnson & Johnson moved to dismiss the complaint for lack of personal jurisdiction—a basis for dismissal that had never been raised in any Related Action. *Id*. ¶ 17. To prevail on such a motion under Florida law, a plaintiff must "prove by affidavit the basis upon which jurisdiction may be obtained." *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). As a result of discovery in the MDL and prior Related Actions, Keller Postman was aware of facts and documents that would contradict Kenvue Inc.'s and Johnson & Johnson's representations to the Florida court and support the Florida court's exercise of personal jurisdiction over both defendants. Romano Decl. ¶ 18. Because

Kenvue had deemed the MDL discovery reproduced in every Related Action to date, Keller Postman anticipated in good faith that the same would be true in the Florida Related Action. *Id*. ¶ 20. Mr. Keller was not aware of and did not weigh in on or approve this approach. *See* Keller Decl. ¶ 9.

In order to demonstrate personal jurisdiction without delay for jurisdictional discovery (especially since Keller Postman was already in possession of relevant discovery) and based on past dealings with Kenvue in other Related Actions, Keller Postman relied upon four documents that Kenvue had designated confidential under the MDL protective order. Romano Decl. ¶¶ 20-21. Each document is a short email thread, totaling fewer than 11 pages across the four documents. *Id*. ¶ 21. One document (APAP-JJCI-0000015607) was quoted a single time in the opposition brief and in Mr. Keller's declaration. *Id.* The remaining three documents were only briefly described in Mr. Keller's declaration. *Id*. Mr. Keller did not review the exhibits. *Id.* ¶ 24. He reviewed his declaration only to confirm that the statements made were truthful to the best of his knowledge. *Id*.; Keller Decl. ¶ 9.

Recognizing that the documents were covered by the MDL protective order, Keller Postman filed the opposition brief, supporting declaration, and exhibits in accordance with Florida's confidential filing rules. Romano Decl. ¶¶ 22, 25. When filed on January 27, 2026, the documents were withheld from the public docket, and they were never accessible to any member of the public. *Id*. ¶ 26. Kenvue's counsel was notified of the filing on January 27 and again on January 28. *Id.* ¶ 27.

On January 30, the Florida clerk's office served Mr. Keller with a letter indicating that, following initial review of the filing, "the information is not subject to confidentiality." *Id.* Ex. 2, Clerk's Letter. The letter advised that the Florida equivalent of a motion to seal would be required

6

to prevent public disclosure. *Id.* ¶ 29. Keller Postman attorney Roseann Romano promptly forwarded that letter to Kenvue's counsel as a courtesy to allow Kenvue to take action to protect the documents, consistent with the procedures set forth in the various protective orders. *Id.* ¶ 30. At that time, Keller Postman continued to believe that the earlier discovery documents would be available for use in Florida based on past dealings with Kenvue's counsel. *Id.* ¶ 31.

Later that day (and three days after the filing), Kenvue demanded that Keller Postman withdraw or move to permanently seal the opposition brief, declaration, and exhibits it had filed on behalf of its client. Kenvue Ex. E. Keller Postman requested a meet-and-confer. Romano Decl. ¶ 34. The parties met via videoconference the next business day, February 2. *Id*. ¶ 37. Mr. Keller did not attend, and often does not attend, such conferences. *Id.*; Keller Decl. ¶ 12. During the meeting, Ms. Romano explained that Keller Postman had used the earlier discovery materials based on prior dealings with the same Kenvue counsel and a good-faith belief that the information would be available to use in the Florida Related Action. Romano Decl. ¶ 38. She offered possible solutions to protect the confidentiality of the documents pending entry of an order that formally deemed the documents reproduced in the case. *Id*.

Kenvue refused. For the first time, Kenvue stated that the MDL discovery would not be available in the Florida Related Action. *Id*. In other words, Mrs. Guist will have to serve duplicative discovery requests and potentially obtain a court order to obtain information that Kenvue has already produced and that her attorneys already possess. Given Kenvue's new position, Ms. Romano quickly conferred with Mr. Keller and other attorneys at the firm who work on this matter. *Id*. ¶ 39. Mr. Keller agreed with Ms. Romano's proposal to immediately withdraw the filing and submit an amended opposition brief, declaration, and exhibits that did not contain information designated as confidential. *Id*. Keller Postman expeditiously obtained advice from local Florida

counsel and the clerk's office about withdrawing the earlier filing to ensure the information was never made public. *Id.* ¶ 40. Keller Postman then prepared a motion to strike the court filing and proposed order and provided drafts to Kenvue's counsel for edits and approval. *Id.* ¶¶ 43-45. On February 4, just two days after meeting and conferring, Keller Postman filed the motion to strike and submitted the agreed upon proposed order to the Florida court. *Id.* ¶ 46. The same day, Keller Postman also filed an amended brief, declaration, and exhibits that contained no information that had been designated confidential pursuant to any protective order. *Id.*

On February 9, the Florida court entered the parties' agreed upon order striking the January 27 court filing. *Id.* Ex. 3, Order Granting Mot. to Strike. Before the court entered the order, Keller Postman continued to interface with Kenvue's counsel concerning a potential motion to seal in the event the court did not enter the agreed order by the clerk's deadline. *Id.* ¶ 47. That remedial action proved unnecessary. *Id.* ¶¶ 47-48. The January 27 filing is permanently removed from the docket. *Id.* ¶ 49; *see also id.* Ex. 4, Guist Docket. It has never been and will never be made public as a result of the January 27 filing. *Id.* ¶ 49.

In the wake of this incident, Mr. Keller has instructed all Keller Postman attorneys about the importance of adhering strictly to court orders without relying on opposing counsel's course of dealing as a basis to expect similar litigation positions in related but different matters. Keller Decl. ¶ 13. He further instituted an express firmwide policy requiring agreements with opposing counsel on discovery matters to be express, not implied. *Id.* He has also discussed what transpired with the attorneys involved and his partners. *Id.* ¶¶ 13-14. He is confident that his colleagues are dedicated professionals who made an honest mistake. *Id.* And he accepts responsibility for any mistake he may have made as a supervisor, both in overseeing this filing and in setting firm policy. *Id.* ¶ 15.

### V.      No Confidential Information Was Used in the Texas Filing.

Following Kenvue's February 2 decision that MDL discovery would not be available in the Florida Related Action, Keller Postman attorneys promptly contacted Kenvue's counsel in Texas to determine whether the same decision would apply in another Tylenol-related case pending in Texas state court. Masslon Decl. ¶ 15. In that case, Keller Postman represents the State of Texas concerning deceptive trade practice and fraudulent transfer claims against Kenvue and its current and former parent companies. *Id*. ¶ 4. Kenvue confirmed that its new position on MDL discovery applied to the Texas case. *Id*. ¶ 15.

The Texas court had initially dismissed all claims against Kenvue Inc. and Johnson & Johnson for lack of personal jurisdiction. *Id.* ¶ 12. It also dismissed one claim against Kenvue. *Id.* Following an amended petition, Kenvue again moved to dismiss the claims for lack of personal jurisdiction. *Id.* As in Florida, Kenvue's confidential documents supported the Texas court's exercise of personal jurisdiction. *Id.* ¶ 13. However, given Kenvue's new position about MDL discovery documents, Keller Postman used *no* information that Kenvue had designated as confidential in its opposing papers. *Id*. ¶ 17. Rather, Keller Postman redacted all confidential information, including *the entirety* of the four MDL documents at issue here. *Id*. ¶ 19.

The redactions in the opposition brief, affidavit, and exhibits filed in the Texas court were so effective that Kenvue's counsel could not tell what was redacted and had to ask for unredacted copies of the documents. *Id.* ¶ 24. Although not required to provide unredacted copies (because they were never filed with the Texas court), Keller Postman provided them to Kenvue's counsel as a professional courtesy. *Id.* ¶ 25. Thus, only Kenvue's counsel (who already possessed all discovery cited) have received an unredacted copy of the filing; it has not been filed or submitted to the court in any way.  *Id.*

9

Along with the fully redacted filing—which revealed zero confidential information—the State asked the Texas court to permit it "to file unredacted copies of its opposition, affidavit in support thereof, and certain exhibits under seal notwithstanding any protective order that Defendants are a party to." *Id.* Ex. 6 at 3, Texas Mot. to Seal. The motion was intended to "protect any interest . . . in preserving the confidentiality of the documents while also ensuring that this Court has a full record to decide the pending motions." *Id*. Kenvue has notified the Texas court that it opposes the State's motion to submit the confidential information to the court. *Id.* ¶ 29. Despite this notice and statements in open court, Kenvue has not asked Keller Postman to withdraw the Texas filing or take any other action to protect the documents. *Id.* ¶¶ 28-29. That is for good reason: Keller Postman did not use or disclose any confidential information to anyone, including the Texas court. And if the Texas court orders the documents produced, using the documents is not a violation of the protective order. Dkt. 351, ¶ 22.

## VI.     Mr. Keller Supervises the Acetaminophen Litigation But Was Not Involved in the Filings.

Kenvue seeks sanctions against Mr. Keller individually based solely on the fact that he signed the filings. But merely signing a filing does not show that the signatory is a "disobedient party," Fed. R. Civ. P. 37(b)(2)(C), who has "fail[ed] to obey an order," *id.* 37(b)(2)(A). Mr. Keller was not involved in preparing the filings, the decision to attach the confidential documents, or the decision to redact confidential information. Keller Decl. ¶ 8; Romano Decl. ¶ 50; Masslon Decl. ¶ 30. Mr. Keller oversees all litigation at Keller Postman and, as is typical for a firm of Keller Postman's size, delegates certain tasks to his colleagues. Keller Decl. ¶ 5. The day-to-day management of each of the firm's cases is the responsibility of senior attorneys. *Id.* With regard to the acetaminophen litigation in particular, Ms. Romano is responsible for the firm's state court tort cases. *Id.* ¶ 6. Mr. Masslon is responsible for the firm's cases on behalf of the State of Texas. *Id.*

¶ 7. Mr. Keller supervises these professionals and participates in weekly meetings with the case teams. *Id.* ¶ 5; Romano Decl. ¶¶ 11-12. He receives regular status updates and advises on overall strategy. Keller Decl. ¶ 5; Romano Decl. ¶ 12; Masslon Decl. ¶ 9.

In connection with the Florida filing, Mr. Keller reviewed his declaration to confirm that it was an accurate and truthful statement based on his personal knowledge. Keller Decl. ¶ 9; Romano Decl. ¶ 24. Mr. Keller did not speak with Ms. Romano about the confidentiality of the documents described in the declaration. Keller Decl. ¶ 9. Ms. Romano advised Mr. Keller about the dispute concerning confidential documents following receipt of Kenvue's letter on January 30. *Id.* ¶ 10; Romano Decl. ¶ 33. He agreed that Ms. Romano should meet-and-confer with Kenvue's counsel. Keller Decl. ¶ 10; Romano Decl. ¶ 33. On February 2, prior to the scheduled meet-and-confer, Mr. Keller reviewed Ms. Romano's proposals for remedying the dispute. Keller Decl. ¶ 11; Romano Decl. ¶ 36. Mr. Keller did not attend the meet-and-confer, and none of Kenvue's counsel has requested a conferral with him personally regarding the Florida filing. Keller Decl. ¶¶ 12, 19; Romano Decl. ¶¶ 37, 52. Following the videoconference, Ms. Romano reported to Mr. Keller that Kenvue had taken a new position regarding discovery in the Florida action and recommended that the firm withdraw the filing and submit a new filing without reference to Kenvue's confidential information. Keller Decl. ¶ 12; Romano Decl. ¶¶ 39-41. Mr. Keller approved the proposed corrective action. Keller Decl. ¶ 12; Romano Decl. ¶ 41.

Mr. Keller also was not responsible for the Texas filing. Mr. Masslon chose to file the redacted documents with the Texas court. Keller Decl. ¶¶ 7, 16; Masslon Decl. ¶¶ 23, 30. Although Mr. Keller received an email that Mr. Masslon sent to about a dozen lawyers before filing the documents in Texas, Mr. Masslon never spoke to Mr. Keller about the filing.  Keller Decl. ¶ 16; Masslon Decl. ¶ 23. Mr. Keller did not edit the documents filed in Texas and his only involvement

11

was reviewing the affidavit that Mr. Masslon prepared to ensure that the statements therein were accurate. Keller Decl. ¶ 17.

Mr. Keller did not learn that Kenvue intended to seek sanctions against him until after Kenvue's February 6 filing. *Id.* ¶ 20. Despite this Court's rules requiring a live meet-and-confer prior to filing such a motion, Kenvue never attempted to meet with Mr. Keller or anyone else at Keller Postman about sanctions. *Id.* ¶ 19; Romano Decl. ¶ 52; Masslon Decl. ¶ 27. Kenvue *still* has never told Mr. Keller or anyone at Keller Postman why it believes the Texas filing violates the MDL protective order or how any corrective action could be taken to protect Kenvue's confidential information. Keller Decl. ¶ 18; Masslon Decl. ¶ 29. Even during an in-person hearing in Texas on February 12, 2026, Kenvue's counsel never requested a meet-and-confer or that Keller Postman withdraw the Texas filing. Masslon Decl. ¶¶ 26-27. To the contrary, Kenvue's counsel urged the Texas court to *consider* the filings as they were submitted to the Texas court. *Id.* ¶ 28.

## ARGUMENT

### I.    Mr. Keller Did Not Violate the Protective Order at All, and the Protective Order Does Not Cover Most of Kenvue's Alleged Misconduct.

It is axiomatic that this Court may not impose Rule 37 sanctions for conduct that did not violate this Court's discovery orders. *See Jay v. Spectrum Brand Holdings, Inc.*, No. 13 Civ. 8137(LTS)(DF), 2015 WL 6437581, at *6 (S.D.N.Y. Oct. 20, 2015) ("As Defendants are seeking sanctions, they have the initial burden of demonstrating Plaintiff's noncompliance."). *First*, Kenvue solely targets Mr. Keller for Rule 37 sanctions without any factual support. While Mr. Keller oversees all litigation at Keller Postman, he was not involved in and did not review or approve the strategic decisions relating to the filings at issue. Keller Decl. ¶ 8. Rather, Mr. Keller's role in the underlying conduct was limited to curing a mistake made by senior attorneys under his supervision. Upon learning that the Florida filing improperly used four confidential documents

12

from this MDL, Mr. Keller immediately approved corrective action. *Id.* ¶ 12. Since then, Mr. Keller has implemented additional safeguards to prevent similar good-faith mistakes from occurring in the future. In particular, Mr. Keller has instructed Keller Postman attorneys to not rely on course of dealing, even as to frequent adversaries, and to secure all agreements in writing. *Id.* ¶ 13. Because Mr. Keller did not preapprove the underlying conduct, he did not disobey this Court's order, to say nothing of doing so in bad faith. Sanctions are not warranted against him merely as a supervisor, since disobedience of a court order cannot be vicarious. *See Naviant Mktg. Sols., Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003) ("Under Rule 37, an attorney may only be sanctioned for personally violating a discovery order[.]"). That is not to say Mr. Keller is a flawless supervisor. He admits he is not and accepts responsibility for any deficiencies in his management role. Keller Decl. ¶ 15.

*Second*, Kenvue's motion is premised on improper use of "a dozen documents" that Kenvue designated as confidential or highly confidential in *some* Related Action. Mot. at 1. But as to **eight** of those documents, this Court's order does not apply. The MDL protective order expressly covers only "documents . . . produced or disclosed in connection with the above-captioned matter," *i.e.*, the MDL. Dkt. 351, ¶ 1. Only **four** of the documents were produced in the MDL, *see supra* tbl., and only those are subject to the terms of this Court's protective order. The remaining eight were produced in connection with Related Actions in California and Illinois, pursuant to protective orders entered by those courts. Only the California and Illinois courts can enforce those protective orders in those cases. *See New Oriental Enter., PTE, Ltd. v. Mission Critical Sols. LLC*, No. 1:20-cv-02327 (MKV), 2022 WL 874783, at *6 (S.D.N.Y. Mar. 24, 2022) ("To the extent that Defendants think Plaintiff disobeyed a state court order, they should seek sanctions upon that court."). While sanctions are not warranted at all, as discussed below, this

13

Court may consider sanctions only for conduct that is covered by the MDL protective order.

*Third*, Kenvue claims that attaching "fully redacted" documents in a Texas case violated the protective order. Mot. at 1. But the protective order only prohibits *using* confidential information in other proceedings. Dkt. 351, ¶ 17. If the confidential information is not revealed in any way and has not been cited, it has not been "used" in any fashion. The protective order *required* Keller Postman to redact any and all information that Kenvue had designated confidential in the MDL to avoid using it to support the State's filing. Nothing in the protective order prohibits Keller Postman from making state courts aware of the existence of other information that may support its clients' claims. That is because the *existence* and *amount* of confidential information is not itself "Confidential Information," as defined by the protective order. *Id.* ¶ 3 (defining "Confidential Information" as "information subject to protection under Federal Rule of Civil Procedure 26(c) or other applicable law"). The disclosure of non-confidential facts *about* confidential information does not compromise the protected status of that information in any respect. The Texas filing did not violate the protective order and, instead, shows a deliberate and good faith effort to *comply* with the protective order by *not* using the confidential information obtained via MDL discovery. The filing also fully protects the documents from public disclosure in the event the Texas court orders Kenvue to produce them in that action. Conduct that *complies* with the protective order cannot support imposing sanctions against Mr. Keller. Even if this Court ultimately disagrees with Keller Postman's interpretation of the protective order, Mr. Keller did not disobey it. Sanctions under Rule 37 requires intent to disobey a clear judicial order, not acting in accordance with a good-faith interpretation.

14

## II.    Sanctions Are Not Warranted Under Rule 37.

### A.  Rule 37(b)(2) Does Not Cover Protective Orders.

Kenvue asks the Court to require Mr. Keller to reimburse "Kenvue the attorneys' fees it has incurred in . . . the filing of the underlying motion," pursuant to Rule 37(b)(2)(C). Mot. at 10. Rule 37(b)(2) authorizes sanctions where "a party . . . fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). A protective order is not "an order to provide or permit discovery," and therefore does not fall within the express terms of Rule 37(b)(2)(A). By their very nature, protective orders *limit* discovery. *See* Fed. R. Civ. P. 26(c) (permitting protective orders to "protect a party or person" from discovery by circumscribing what information must be revealed). It is only when a protective order is *denied* that a party may be ordered to "provide or permit discovery." Fed. R. Civ. P. 26(c)(2).

While district courts in this circuit have frequently disregarded the plain text of Rule 37(b)(2), this Court is not bound by those decisions. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." (quotation omitted)); *see also* Mot. at 6 (citing district court cases finding protective orders subject to Rule 37(b)). The Second Circuit has never weighed in on this question, and courts of appeals that have considered the issue are split. The Eleventh Circuit squarely held that protective orders "do not fall within the scope of Rule 37(b)(2)" based on the text of that rule. *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1323 (11th Cir. 2001). Under that holding, courts retain ample authority to prevent protective order abuses by imposing sanctions pursuant to their inherent power. Other courts of appeals have disagreed and held that Rule 37(b) applies to protective orders. *See, e.g.*, *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 & n.4 (5th Cir. 2012) (holding that Rule 37(b) applies to protective orders because the 1970 Advisory Committee

15

Notes identify Rule 26(c) as a rule that "authorize[s] orders for discovery"). But the Eleventh Circuit properly relies on the unambiguous text of the rule. That approach is consistent with the Second Circuit's method of construing Rule 37. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 298 (2d Cir. 2006) (disregarding Advisory Committee Notes because they "cannot be squared with the plain language of Rule 37(c)(1) itself"). Because the language of Rule 37(b) is clear, this Court need not look further than "the text for its 'plain meaning.'" *United States ex rel. Eisenstein v. City of N.Y.*, 540 F.3d 94, 97 (2d Cir. 2008) (interpreting a rule of procedure) (citation omitted). Because neither Mr. Keller nor his firm have "fail[ed] to obey . . . an order to provide or permit discovery," there is no basis to award Kenvue attorneys' fees pursuant to Rule 37(b)(2)(C). Fed. R. Civ. P. 37(b)(2)(A). Rather, Kenvue's request for sanctions must be analyzed under the Court's inherent authority, which requires a standard that Kenvue cannot meet, as discussed below.

**B. Kenvue Has Not Shown That Mr. Keller Disregarded a Clear Order.**

Even if Rule 37(b)(2) applied to protective orders, Kenvue has failed to show that Mr. Keller "fail[ed] to obey" this Court's order. *See Jay*, 2015 WL 6437581, at *6 ("As Defendants are seeking sanctions, they have the initial burden of demonstrating Plaintiff's noncompliance."). To impose sanctions under Rule 37(b)(2), the Court must find "there is clear and convincing evidence that counsel disregarded a clear and unambiguous scheduling or other pretrial order." *Perez v. Edwards*, No. 20-cv-1359, 2023 WL 5935029, at *3 (S.D.N.Y. Sept. 12, 2023) (citation omitted). The undisputed evidence here shows that Mr. Keller did not "disregard[]" the protective order. He found out about any putative violation after the fact and acted promptly to remediate. Keller Decl. ¶¶ 10-14. His colleagues similarly undertook significant efforts to protect Kenvue's confidential information and comply with the order. Romano Decl. ¶¶ 22, 25-27, 30; Masslon Decl. ¶¶ 17, 19-21. In addition, Kenvue's interpretation of the pertinent provisions of the protective order (Mot. at 2-3) makes clear that the order was *not* "clear and unambiguous." Related Actions

16

are not Consolidated Actions, and describing the existence of confidential information is not using it.

To "disregard" the protective order means to "ignore" it or "to pay no attention . . . to" it. Disregard, *American Heritage Dictionary* (5th ed. 2022), https://www.ahdictionary.com/word/search.html?q=disregard [https://perma.cc/NY9M-Y9BL]. The undisputed evidence shows that Keller Postman paid attention to its obligations under the protective order to protect Kenvue's confidentiality designations by filing that information under seal or in redacted form. Mot. at 4 (describing compliance with confidentiality procedures); Romano Decl. ¶¶ 22, 25; Masslon Decl. ¶¶ 17, 19-21. That is precisely what the protective order required. Dkt. 351 ¶ 20 (requiring "all reasonable and necessary steps to assure the security of any Confidential Information"). In addition, consistent with the protective order, Keller Postman contemporaneously notified Kenvue of the filing and of the Florida clerk's decision that a motion to seal would be required to permanently protect the information. Romano Decl. ¶¶ 27, 30; Dkt. 351, ¶ 24 (requiring "[n]otice" and "all reasonable efforts to prevent [unauthorized] disclosure"). The decision to use the confidential information in Florida, too, was based on a good-faith assessment that the discovery would be "produced in" the Florida "Related Action," consistent with prior dealings with Kenvue's counsel. Romano Decl. ¶¶ 13-15, 20; Dkt. 351, ¶ 17. That decision was made *because of* the language in the protective order, not by ignoring it. The "clear and convincing evidence" shows no "disregard" for this Court's order nor the confidentiality of information Kenvue produced in the MDL. Kenvue certainly has not met *its* burden by clear and convincing evidence to show the contrary proposition.

What is more, the evidence suggests the protective order was not, in fact, a "clear and unambiguous" court order. Kenvue claims that the Florida action is not a "Related Action" because

17

such a designation requires "the [state] court [to] adopt[] this Court's Coordination and Protective Orders." Mot. at 3. According to Kenvue, absent entry of those orders, the confidential information Kenvue produced in the MDL can never be used in any other proceeding. *Id.* Keller Postman has consistently interpreted the protective order to permit use of the confidential information when it has been produced in "[c]ases asserting APAP Claims . . . filed in state courts." Dkt. 382 at 1; *see also* Romano Decl. ¶¶ 13-15. Under that definition of "Related Action," the Florida case is a "Related Action" because Mrs. Guist alleges her son "developed autism spectrum disorder . . . as a result of in utero exposure to acetaminophen." Dkt. 382 at 1. And, consistent with Kenvue's practice in the California and Illinois cases before it, it was reasonable to think the MDL discovery would be produced and available for use in the Florida action. While Keller Postman believes the language of this Court's orders is clear and consistent with its interpretation, that Kenvue has offered an alternative interpretation suggests ambiguity. Failure to "obey" an ambiguous order cannot justify sanctions. *See Next Invs., LLC v. Bank of China*, 12 F.4th 119, 131 (2d Cir. 2021) (affirming denial of contempt sanctions where there were "[a]mbiguities in the order's language").

## C.  Any Failure to Obey the Protective Order Does Not Justify Monetary Sanctions.

Even if the Court finds "clear and convincing evidence that counsel disregarded a clear and unambiguous . . . order," *Perez*, 2023 WL 5935029, at *3 (citation omitted), the inquiry does not end there. The Court may not award sanctions if "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). In making that determination, the Court must consider: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequence of . . . noncompliance." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (citation omitted). Each of these factors cuts against sanctions.

18

*First*, the conduct at issue was not willful. Mr. Keller is the "party" against whom sanctions are sought, and it is undisputed that his role was limited to that of a supervisor. Keller Decl. ¶ 8; Romano Decl. ¶ 11; Masslon Decl. ¶ 9. Kenvue cannot possibly suggest Mr. Keller willfully supervised his colleagues in a manner *designed* to produce a protective-order violation. And while a Keller Postman attorney mistakenly relied upon a prior course of dealing with Kenvue's counsel regarding the ability to use documents from MDL discovery in Related Actions, she complied with critical portions of the protective order designed to prevent disclosure of the confidential information. Romano Decl. ¶¶ 20-22, 25-27. In doing so, she ensured that Kenvue's confidential information was protected, as required by the protective order, including filing under Florida's confidential information procedures and immediately notifying Kenvue about the clerk's determination that a motion to seal would be required to protect the information. *Id.* ¶¶ 22, 25, 27, 30.

*Second*, "lesser sanctions" will accomplish the purposes of Rule 37(b) and ensure compliance with the protective order. *World Wide Polymers, Inc.*, 694 F.3d at 159. In general, Rule 37 sanctions serve three purposes: (1) to "ensure that a party will not be able to profit from its own failure to comply"; (2) "to secure compliance with the particular order at hand"; and (3) to serve as a "general deterrent." *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979). Keller Postman cannot "profit" from the conduct because the offending filing has been permanently removed from the Florida docket and replaced with an amended version that does not refer to or attach confidential information. Romano Decl. ¶ 49. Because the Florida court will have no opportunity to review the confidential information, the conduct will not aid in obtaining a positive result for Mrs. Guist or the firm. In addition, the misconduct was corrected before Kenvue filed its motion, and so any sanctions cannot "secure

19

compliance"—Mr. Keller is already in compliance with the protective order in all respects. Finally, any deterrent effect would be limited. The circumstances here were based good-faith reliance on prior dealings with Kenvue's counsel. Because Kenvue has now made clear that it will not follow past practices and Keller Postman has already implemented safeguards to prevent confusion, Keller Decl. ¶ 13, future violation of this Court's protective order (or any protective order in acetaminophen litigation) is exceedingly unlikely.

*Third*, the "period of noncompliance" was very short. *World Wide Polymers, Inc.*, 694 F.3d at 159 (citation omitted). As soon as Kenvue notified Keller Postman that it had adopted a new position about reproducing MDL discovery—*i.e.*, that the good-faith assumption about using the documents was incorrect—Mr. Keller immediately approved corrective action, including all necessary steps to strike the filing and submit an amended filing that did not use any information designated confidential. Romano Decl. ¶ 41; Keller Decl. ¶ 12. Those actions were completed mere days after the original filing, during which time the confidentiality of the documents was not compromised in any way. As this Court has recognized, "chang[ing] course" to stop or cure a violation "lessen[s]" "the need for sanctions." *Barry White Fam. Tr. U/A/D v. Oliver*, No. 24cv7509 (DLC), 2025 WL 3022412, at *9 (S.D.N.Y. Oct. 29, 2025) (Cote, J.) (declining to impose sanctions).

*Fourth*, this Court has not previously warned Mr. Keller of "the consequences of noncompliance." *World Wide Polymers, Inc.*, 694 F.3d at 159 (cleaned up). Keller Postman takes seriously its obligations to comply with court orders and has consistently done so before this Court and every other its attorneys have appeared before. Keller Decl. ¶ 21; Romano Decl. ¶¶ 6, 9. The conduct at issue here was quickly remedied and did not prejudice Kenvue or undermine the confidentiality of its documents in any way.

20

Two recent decisions by district courts in this circuit are instructive in assessing whether sanctions are unjust in the circumstances at issue here. In *Richards v. Kallish*, Judge Reznik "decline[d] to impose a financial sanction" where an attorney had violated a protective order by twice disclosing "attorneys' eyes only" information to her client. No. 22-cv-9095 (CS) (VR), 2024 WL 180869, at *7-8 (S.D.N.Y. Jan. 17, 2024). The court found that the attorney's conduct was "negligent, if not reckless" but that she "lacked malintent," as evidenced by "immediately" taking corrective actions to prevent disclosure of the confidential information. *Id.* at *6. The court concluded that sanctions were unwarranted because the attorney "took immediate remedial measures" and "Defendants suffered no real prejudice." *Id.* at *7. In rejecting defendants' request for an award of attorneys' fees, the court evaluated each of the *World Wide Polymers* factors and concluded that three of the four weighed against imposing a financial sanction. *Id.* at *8. The circumstances in *Richards* are directly analogous to those here where the conduct was quickly corrected and did not prejudice Kenvue in any way.

By contrast, in *Minskoff v. Mendoza* (a case Kenvue heavily relies upon (at 7-9)), another district court in this Circuit awarded attorneys' fees for egregious and unrepentant protective order violations. 797 F. Supp. 3d 238, 267 (E.D.N.Y. 2025). There, a defendant (1) *publicly* disclosed confidential information *after* the court *twice* denied permission to do so, (2) had been *warned* of the consequences of violating the protective order, (3) had previously *failed* to file under seal, (4) made *no effort* to retract the publicly disclosed confidential information, (5) *refused to admit* to the violation, and (6) caused *irrevocable harm* as a result of the disclosure. *Id.* The *Minskoff* court had previously *denied* sanctions against the defendant where the alleged violation was brief. *Id.* at 266. None of those circumstances are present here. Quite the opposite. Kenvue's confidential information has never been made public because of the conduct at issue, Keller Postman has

21

admitted to and corrected the mistake, and there is no history of misconduct in this case or other cases.

Kenvue has not identified a single case involving conduct similar to that at issue here where the court imposed monetary sanctions. *Hunt*, *SIMO Holdings*, and *Abdou*, are easily distinguishable because they involved sharing or disclosing confidential information to the *public*, either by directly giving documents to individuals outside the litigation or by filing them on the public docket. *See Hunt v. Enzo Biochem, Inc.*, No. 06 CIV. 170(SAS), 2011 WL 4840713, at *5-7 (S.D.N.Y. Oct. 12, 2011) (ordering sanctions where attorney's actions caused confidential information to be filed on a public docket); *Abdou v. Mahany & Ertl, LLC*, No. 19-CV-1824 (JHR) (RWL), 2024 WL 3503046, at *44 (S.D.N.Y. June 11, 2024) (ordering sanctions where counsel filed confidential information on the public docket after expressly being advised to file under seal); *SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, No. 18-CV-5427 (JSR), 2020 WL 7231095, at *1 (S.D.N.Y. Dec. 7, 2020) (awarding sanctions where counsel disclosed confidential information to another law firm where court had twice denied permission to do so). None of the confidential information at issue here has been or will be disclosed publicly because of Keller Postman's quick corrective actions. This conduct is on all fours with *Richards*, where this Court declined to impose any monetary sanctions. 2024 WL 180869, at *8. This Court should reach the same result here.

**D. Any Rule 37(b)(2)(C) Sanctions Must Be Limited to Expenses "Caused by the Failure" to Obey.**

Kenvue seeks expenses solely in connection with *this motion*. Mot. at 10. Rule 37(b)(2)(C) expressly limits any order for "reasonable expenses" to those "caused by the failure" to "obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A), (C). It was not necessary for Kenvue to incur expenses *after* Keller Postman fully complied with the protective order. Requiring

Keller Postman to reimburse Kenvue for expenses that had no bearing on protecting its confidential information or ensuring that the information would not be used in a Related Action is unjust. The *only* necessary expenses Kenvue incurred to protect its confidential information was attorney time associated with drafting the January 30 demand letter to Keller Postman, participating in the February 2 meet-and-confer, and reviewing the motion to strike the Florida court filing. *See Abdou*, 2024 WL 3503046, at *42-43 (awarding fees only in connection with activities related to protecting confidentiality of documents filed on public docket and not the subsequent motion for sanctions). But even these limited expenses are unjust given the fact that Kenvue has suffered no prejudice as a result of the underlying conduct.

### E. Kenvue's Failure to Comply With Procedural Rules Renders Any Sanctions Unjust.

Courts in this Circuit have recognized that a party's failure to adhere to procedural requirements supports a finding that "it would be unjust to award counsel fees" even where a lack of compliance was "not substantially justified." *Cuno Inc. v. Pall Corp.*, 116 F.R.D. 279, 281 (E.D.N.Y. 1987). Here, Kenvue "by-passed th[e] requirement" to meet and confer about this motion (Cote Ind. Practice 2(C)). *Id.* If Kenvue itself did not comply with this Court's rules, Mr. Keller and his firm should not be required to pay the expenses associated with its motion. *See Jenkins v. Toyota, Japan*, 106 F.R.D. 185, 186 (W.D.N.Y. 1984) (denying motion for sanctions against plaintiffs and ordering defendants to pay plaintiff's attorneys' fees for failing to meet-and-confer). The requirement for a live meet-and-confer exists for a reason. Had Kenvue better appreciated Mr. Keller's role, perhaps it would have thought better of a sanctions motion directed at him. If Mr. Keller had heard Kenvue's position, he might have collaborated on further ways to systematically protect against inadvertent mistakes in future Related Actions. Regardless, it is not

23

just to sanction Mr. Keller for his colleagues' good-faith conduct if Kenvue itself did not abide by this Court's rules.

In sum, the Court should deny Kenvue's request for Rule 37(b)(2)(C) sanctions in full.

### III.    There Is No Evidence of Bad Faith and No Exception Applies to Justify Sanctions Under the Court's Inherent Authority.

This Court's "inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). To impose sanctions under the Court's inherent power, "the district court must make an explicit finding of bad faith." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 143 (2d Cir. 2023) (quoting *United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000)). The record does not support a finding of bad faith on Mr. Keller's part or any Keller Postman attorney here. *See Browning Debenture Holders' Comm. v. DASA Corp.*, 560 F.2d 1078, 1089 (2d Cir. 1977) ("Bad faith is personal" and "may not automatically be visited" on others.). Kenvue concedes as much by arguing, exclusively, that an exception applies. Mot. at 10. But that "limited exception," *In re Plumeri*, 434 B.R. 315, 328 (S.D.N.Y. 2010) (Cote, J.), applies only "when an attorney's misconduct is *not related* to the representation of a client," *Rossbach*, 81 F.4th at 143 (emphasis added). Here, the conduct at issue is directly tethered to Mr. Keller's and his firm's "legitimate efforts at zealous advocacy" on behalf of Mrs. Guist in Florida. *Seltzer*, 227 F.3d at 40. Absent a showing of bad faith, sanctions cannot be imposed for such "representational" conduct. *Rossbach*, 81 F.4th at 143.

The Second Circuit's decision in *Wolters Kluwer Financial Services, Inc.*, 564 F.3d at 115, confirms that improperly filing confidential materials constitutes *representational* conduct that is subject to the bad faith requirement. There, the district court had entered a protective order similar to the one here stating that discovery materials produced in the case "shall not be used [in] any other litigation proceeding." *Id.* at 113. Plaintiff's counsel dismissed the case and then "refused to

24

return the discovery material produced by defendants." *Id.* The same lawyers then filed a motion for relief in another court and "append[ed] 115 pages of material produced in [the initial action] that were subject to the Confidentiality Order." *Id.* The defendants moved for sanctions, and the original district court "imposed a total of twenty-seven non-monetary sanctions." *Id.* On appeal, the Second Circuit reversed, finding there was "nothing in the record suggest[ing] that the decision to permit" filing of confidential materials subject to another court's protective order "was made by the firm in bad faith or for any improper purpose." *Id.* at 115. "[A]bsent . . . specific evidence of . . . bad faith, a sanction under the court's inherent power is unjustified." *Id.* at 114.

By contrast, cases that apply the limited exception to the bad faith requirement are in no way connected to a lawyer's advocacy for a client. Indeed, the Second Circuit first recognized the bad-faith exception for non-representational conduct in a case involving sanctions for an attorney's "tardiness in returning to court for the jury verdict." *Seltzer*, 227 F.3d at 37. Similarly, in *Palmer v. Simon's Agency, Inc.*, the Second Circuit upheld inherent powers sanctions for the non-representational conduct of "failing to comply with a local rule for filing a timely response to a motion to dismiss." 833 F. App'x 838, 839 (2d Cir. 2020) (per curiam); *see also George v. Pro. Disposables Int'l, Inc.*, No. 15-CV-3385 (RA), 2018 WL 2148762, at *2 (S.D.N.Y. May 1, 2018) (imposing inherent authority sanctions "without a finding of bad faith" for "failing to submit documents to opposing counsel and to the Court in a usable and timely manner" (citation omitted)). These examples of misconduct directly relate to the Court's ability to manage its courtroom and calendar and have nothing to do with the representation of clients. The conduct at issue here is not comparable.

Because Kenvue has not and cannot show bad faith and no exception to that requirement

25

applies, the Court cannot award sanctions under its inherent authority.[2]

**CONCLUSION**

For the foregoing reasons, sanctions are not warranted and Kenvue's motion should be denied in full. To the extent the Court disagrees, any sanctions must be limited to the use of four documents designated as confidential in the MDL and covered by the MDL protective order.

Dated: February 17, 2026

Respectfully submitted,

*/s/ Ashley Barriere*
Ashley Barriere
KELLER POSTMAN LLC
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
Tel. (312) 210-7307
ashley.barriere@kellerpostman.com

Ashley C. Keller (*Pro Hac Vice*)
KELLER POSTMAN LLC
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, FL 33134
Tel. (833) 633-0118
ack@kellerpostman.com

Warren D. Postman (*Pro Hac Vice*)
Roseann R. Romano (*Pro Hac Vice*)
KELLER POSTMAN LLC
1101 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
Tel. (202) 983-5484
wdp@kellerpostman.com
roseann.romano@kellerpostman.com

---

[2] Even Kenvue concedes that bad faith is required for the imposition of attorneys' fees. *See Seltzer*, 227 F.3d at 41-42 ("When a district court invokes its inherent power to impose attorney's fees . . . the district court must make an explicit finding of bad faith."). It is also required for any other punishment unless an exception applies, which it does not here.

26

## LOCAL RULE 7.1(c) CERTIFICATION

I hereby certify that this brief complies with the word-count limitations set forth in Local Rule 7.1(c) because it contains 8,436 words.

/s/ *Ashley Barriere*
Ashley Barriere
