**IN THE UNITED STATES DISTRICT COURT**
**OF THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: Acetaminophen – ASD-ADHD Products Liability Litigation<br><br><br>This Document Related To: All Cases | 22md3043 (DLC) |

## DECLARATION OF ROSEANN R. ROMANO IN SUPPORT OF MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS AGAINST ASHLEY KELLER

I, Roseann R. Romano, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am Counsel with the law firm of Keller Postman LLC. I represent the firm's clients who allege injuries from prenatal exposure to acetaminophen in the above-captioned MDL, as well as in state-court cases in California, Illinois, Florida, and Texas.

2. I am admitted to practice law in the District of Columbia and the State of Iowa. I am admitted pro hac vice to practice before the United States District Court for the Southern District of New York in connection with the above-captioned MDL.

3. I submit this Declaration in support of Plaintiffs' Memorandum in Opposition to Kenvue's Motion for Sanctions against Ashley Keller. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, I would competently testify as to the matters stated herein.

4. I earned my Juris Doctor at the University of Iowa College of Law in 2015. I completed a clerkship for the United States Court of Appeals for the Eighth Circuit. Prior to joining

Keller Postman in May 2022, I represented unions and plaintiffs in labor and employment law matters at another law firm in Washington, D.C. In my career, I have handled cases in well over a dozen state and federal courts at both the trial and appellate levels.

5.    Since joining Keller Postman, I have worked on many of the firm's matters. I began working on the firm's acetaminophen cases in approximately October 2022.

6.    I am familiar with and have reviewed the MDL protective order several times. Since the order was entered in January 2023, I have repeatedly complied with the order by taking all necessary precautions in handling, transmitting, and filing information that Kenvue designated confidential. I take all court orders seriously and have always acted in good faith to comply with the orders of this Court.

7.    Kenvue produced nearly 78,000 documents in the MDL. To my knowledge, Kenvue designated every document it produced "confidential" or "highly confidential," including copies of publicly available scientific studies. Kenvue has not produced any documents in the MDL since May 2023. A true and correct copy of Kenvue's final MDL Production Index, dated May 22, 2023, is attached hereto as Exhibit 1.

8.    I have reviewed thousands of confidential documents that were produced by Kenvue and various third parties in connection with acetaminophen litigation. I have never publicly disclosed any confidential document through a court filing or any other means.

9.    I have never been accused of misconduct in this Court, have never been warned about noncompliance with the protective order, and have never been personally sanctioned by a court for disobeying court orders.

10.    Since early 2025, I have managed day-to-day litigation activities for the firm's acetaminophen cases pending in state courts in Illinois and, more recently, Florida. In this capacity,

2

I manage a small team and direct activities relating to case investigation, discovery, and law and briefing.

11.    Senior Partner Ashley Keller supervises my work on the firm's acetaminophen cases. In addition to Mr. Keller, there are up to four partners who assist with and oversee the acetaminophen cases. Mr. Keller and the other partners have authorized me to make decisions and provide final approval for court filings.

12.    I provide Mr. Keller with regular updates and seek his advice on strategic decisions. I lead weekly meetings with the case team to discuss litigation activities. Mr. Keller typically attends those meetings.

13.    Keller Postman filed an acetaminophen case in California in February 2024. Kenvue's counsel sought to have the court enter the MDL coordination and protective orders. Keller Postman agreed to entry of a protective order that is substantially similar to the MDL protective order but did not agree to entry of the coordination order. Kenvue agreed that the documents it produced in the MDL could be used in the California case.

14.    Keller Postman filed another acetaminophen case in Illinois in April 2024. The agreed case management order provided that all discovery produced by any party to the MDL could be used in the Illinois matter. The Illinois court entered that order on December 16, 2024.

15.    Several months later, the Illinois court entered an agreed protective order that is substantially similar to the MDL protective order on March 25, 2025. Kenvue's counsel had not required that the protective order be entered prior to deeming all prior discovery available for use in the Illinois matter. Kenvue did not propose entry of the Coordination Order in Illinois.

16. In approximately December 2025, Keller Postman filed a complaint in Florida state court on behalf of the firm's client, Melissa Guist. The complaint was filed on December 15, 2025, and served on all named defendants shortly thereafter.

17. On January 13, 2026, Kenvue, Kenvue Inc., and Johnson & Johnson filed a joint motion to dismiss the complaint. Defendants argued the complaint should be dismissed for lack of personal jurisdiction. Representatives of Kenvue Inc. and Johnson & Johnson submitted sworn declarations that those companies were not involved in conduct relating to Tylenol.

18. Based on my experience litigating prior acetaminophen cases, I am aware of information that Kenvue produced in prior litigation that casts doubt on the assertions that Kenvue Inc. and Johnson & Johnson had made in their motion to dismiss and supporting declarations.

19. Because Florida law requires a plaintiff to prove facts that provide a basis for the court to exercise its jurisdiction in order to defeat a motion to dismiss for lack of personal jurisdiction, I believed I had an ethical obligation to Mrs. Guist to allow the Florida court to consider the information that I had learned in prior cases.

20. In considering the options for fulfilling my ethical obligations to Mrs. Guist, I relied on my experience with Kenvue's counsel in the California and Illinois actions. Based on that experience, I anticipated that discovery produced by Kenvue in earlier cases would be available to use in the Florida matter. As a result, the opposition brief on behalf of Mrs. Guist described and attached certain documents that Kenvue had designated confidential.

21. Four of the documents that were attached to the filing were produced in the MDL. Each document is a short email thread. The total page count across the four documents was fewer than 11 pages. One of the documents was quoted once in the opposition brief and once in Mr.

4

Keller's declaration. The other three documents were only generally described in Mr. Keller's declaration.

22.     In order to comply with the MDL protective order (and similar orders in place in California and Illinois), I determined that the documents designated confidential must be filed under seal to avoid public disclosure. Under Florida rules, the filing party must submit a Notice of Confidential Information Within Court Filing to ensure that confidential information is not posted to the public docket. The clerk's office will then notify the filing party whether a motion is needed to permanently seal the filing. Following notice from the clerk's office, any party may move to permanently seal the filing within ten days. Once a motion to seal is filed, the confidential information will not be posted to the public docket unless the court makes a determination that the information is not confidential.

23.     On January 25, 2026, I shared a draft of the Florida opposition brief with Mr. Keller and several other attorneys. Mr. Keller did not provide any edits or feedback on the brief.

24.     On January 27, 2026, I shared a draft of the Declaration of Ashley Keller with Mr. Keller and several other attorneys. I asked Mr. Keller to review the declaration to ensure it was accurate based on his personal knowledge prior to signing. Mr. Keller confirmed that the information in the declaration was accurate.

25.     My team prepared the Notice of Confidential Information Within Court Filing, which identified the specific portions of the brief, declaration, and exhibits that contained information that Kenvue had designated confidential, and added a "Confidential" cover page to each of the confidential documents.

26.     Later that day, the entire opposition filing package was filed. I confirmed that the filing never appeared on the public docket.

27.    It is my understanding that Kenvue's counsel received an electronic filing notice at the time the filing was completed on January 27, 2026. In an abundance of caution, I also arranged for Kenvue's counsel to receive a copy of the filing via a password-protected and secure file share on January 28, 2026.

28.    Kenvue's counsel did not contact me or anyone at Keller Postman about the filing at that time.

29.    On January 30, 2026, Mr. Keller forwarded me a letter he received from the Florida clerk's office. The letter indicated that, following initial review of the filing, "the information is not subject to confidentiality," and a motion to seal would be required to permanently protect the information from public discovery. A true and correct copy of that letter is attached hereto as Exhibit 2.

30.    Upon receipt of the letter, I checked the public docket to determine whether the clerk's office had also served Kenvue's counsel with a copy of the letter. The docket was not clear, so I promptly forwarded the letter to Kenvue's counsel to ensure they were aware of the clerk's office determination and that a motion to seal would be required.

31.    At that time, I still believed that the MDL discovery documents would be available for use in Florida based on my past dealings with Kenvue's counsel. I believed my efforts to protect the confidentiality of Kenvue's documents and promptly alert Kenvue's counsel about developments related to the documents were consistent with the requirements of the protective order. Kenvue had not alerted me or any of my colleagues that it believed the filing was improper.

32.    Later that day, I received a letter from Kenvue's Florida counsel that demanded that Keller Postman withdraw the filing or move to permanently seal it.

6

33.    Upon receipt of Kenvue's letter, I conferred with two partners who work on the acetaminophen cases. Then, I emailed Mr. Keller to alert him to the dispute. I explained that the documents had not been made public in any way. I also explained that I included them with the filing to refute the personal jurisdiction arguments and that I anticipated the documents would be deemed produced in Florida, consistent with Kenvue's practice in California and Illinois. I proposed that I meet and confer with Kenvue's counsel. Mr. Keller agreed with that approach.

34.    On January 31, 2026, I requested a meet-and-confer on the next business day, February 2, 2026. Kenvue's counsel agreed.

35.    On January 31, 2026, I also notified my colleague, John Masslon, that Kenvue had demanded that Keller Postman withdraw the Florida filing. I was aware that Mr. Masslon intended to use the same documents in a filing on behalf of the State of Texas.

36.    Before the February 2 meet-and-confer, I emailed Mr. Keller and two other partners about potential solutions that I intended to discuss with Kenvue's counsel. One of the options I proposed was withdrawing the filing. Mr. Keller approved the options.

37.    I participated in the February 2 meet-and-confer via videoconference with Kenvue's counsel, including Jessica Brennan, Andrew Kruppa, and Nadine Kohane. Mr. Keller did not attend the meet-and-confer.

38.    During the meeting, I explained that Keller Postman had relied on past dealings with Kenvue in prior state court actions in using that documents and that we were amenable to various solutions to ensure that documents Kenvue had designated as confidential remained protected from public view. Ms. Brennan stated that Kenvue's prior discovery documents would not be deemed produced in the Florida action. I proposed several possible solutions to protect the confidentiality of the documents pending entry of an order deeming the documents produced in

the Florida case. However, it became clear that withdrawing the filing was the only option given Kenvue's position on discovery in Florida. I stated that Keller Postman would confirm our agreement to that approach later that day.

39.    Following the meeting, I emailed Mr. Keller and two other partners that Kenvue was taking a new position and would not permit use of prior discovery documents in the Florida case. I proposed withdrawing the filing.

40.    I also conferred with local counsel that Keller Postman had affiliated with in St. Johns County, Florida, and the clerk's office to determine the proper procedural steps for withdrawing the January 27 filing.

41.    I again emailed Mr. Keller and two other partners with a step-by-step proposal for withdrawing and correcting the January 27 filing. Mr. Keller and another partner approved that corrective action.

42.    That same day, I notified Kenvue's counsel that we agreed to withdraw the January 27 filing and refile without relying on any confidential information. I also advised that I had contacted the clerk's office about the appropriate actions that needed to be taken to ensure that the initial filing is never publicly accessible.

43.    On February 3, 2026, the clerk's office advised that we should submit the amended opposition and supporting documents, then file a motion to strike the January 27 filing. I advised Kenvue's counsel of the same. I further confirmed that this corrective action would mean the January 27 filing will never be posted to the public docket and it will be permanently hidden.

44.    Kenvue's counsel consented to the motion to strike. I provided drafts of the motion to strike and proposed order to Kenvue's counsel on the evening of February 3, 2026, for their review.

45.    Kenvue's counsel provided some requested changes to the motion and proposed order on February 4, 2026. I accepted most of the proposed edits to the motion and all of the proposed edits to the proposed order.

46.    Later that day, the amended opposition filing package was filed. It does not contain, describe, quote, or attach any of Kenvue's confidential information. Once it was on file, the agreed motion to strike was filed. I also submitted the agreed proposed order to the Florida court, copying all counsel of record.

47.    After the filings had been submitted, Kenvue's counsel wrote to me about concerns that the January 27 filing would be posted to the public docket if the court did not enter the order by February 10, 2026. I worked with Keller Postman's local counsel to alleviate Kenvue's concerns and agreed to submission of a motion to seal in the event the court did not enter the motion to strike.

48.    The Florida court granted the motion to strike on February 9, 2026. A true and correct copy of that Order is attached hereto as Exhibit 3.

49.    The January 27 filing has never appeared on the public docket. I confirmed this fact again in the course of preparing this declaration. The filing is completely removed from the public docket and not referenced in any way. Kenvue's confidential information will never be made public as a result of the January 27 filing. A true and correct copy of the public docket in the Florida case is attached hereto as Exhibit 4.

50.    I accept responsibility for the January 27 filing in Florida state court. I should not have relied on past interactions with Kenvue's counsel and instead should have expressly verified Kenvue's position on prior discovery. I protected the information that Kenvue designated as confidential from public disclosure. I did not ignore or intend to disobey the protective order at

any time. I have discussed this incident with Mr. Keller and it will not happen again. I believe the new firmwide policy will be effective in preventing confusion based on implied agreements, past practices, or courses of dealing.

51.     I also reviewed Keller Postman's filing on behalf of the State of Texas and was aware that Mr. Masslon intended to redact all confidential information. I believed and continue to believe that this conduct fully complies with the MDL protective order, as well as those entered in California and Illinois.

52.     I first learned that Kenvue intended to seek sanctions against Mr. Keller on February 7, 2026. Before that date, Kenvue's counsel never raised the possibility of sanctions to me or, to my knowledge, anyone else at my firm. Sanctions against Mr. Keller or any Keller Postman attorney were never discussed during the February 2, 2026 meet-and-confer with Kenvue counsel or at any time thereafter.

Dated: February 17, 2026

Roseann R. Romano (*Pro Hac Vice*)
KELLER POSTMAN LLC
1101 Connecticut Avenue NW
Suite 1100
Washington, DC 20036
Tel. (202) 983-5484
roseann.romano@kellerpostman.com