UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: Acetaminophen – ASD-ADHD Products Liability Litigation<br><br>This Document Relates To: All Actions | Docket No.: 22-md-3043 (DLC) |

**<u>DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR SANCTIONS</u>**

# INTRODUCTION

Mr. Keller's laundry list of excuses fails to justify his repeated violations of this Court's Protective Order in two state court actions. Most notably, Mr. Keller argues that he cannot be sanctioned because he merely "acted as a supervisor[.]" Opp'n at 2. But the notion that Mr. Keller was a passive player is belied by the fact that he signed *each filing at issue*. Moreover, it is blackletter law that a lead attorney cannot delegate authority to his subordinates and then avoid responsibility for the manner in which that authority is carried out.

Mr. Keller also argues that there could not have been any violation of the Protective Order because no protected documents were ever publicly disclosed. But the Protective Order clearly states that the documents "shall not be *used* in any other proceeding." Protective Order ¶ 17 (emphasis added). As courts have recognized, this language unambiguously precludes counsel from doing anything with protected materials in other litigation, regardless of whether those materials are made public or fully redacted.

For all of these reasons, discussed further below, the Court should reject Mr. Keller's arguments, award attorneys' fees, and issue a reprimand.

# ARGUMENT

## I. THE COURT SHOULD AWARD ATTORNEYS' FEES UNDER RULE 37.

Mr. Keller argues that he should not be sanctioned under Rule 37 because: (1) he was not directly "involved in" the filing of the protected materials; (2) Rule 37 does not cover protective orders; (3) he did not "disregard" the Protective Order; (4) an award of fees would be "unjust"; and (5) any misconduct did not cause Kenvue to incur attorneys' fees. Opp'n at 12-22. These arguments are meritless.

*First*, Mr. Keller argues that sanctions are not warranted because he merely "acted as a supervisor" and "did not review or approve the strategic decisions relating to the filings at issue."

1

*Id.* at 2, 12. But Mr. Keller signed all of the filings in question, including a brief that attached multiple documents containing the word "Confidential" in large bold font on their title page; a declaration describing and quoting from those documents; and a Notice of Confidential Information expressly apprising the Florida state court that these filings contained "confidential information." *See* Exs. B-D to the Brennan Decl. Moreover, even if the Court were to look past those signatures, a supervisory attorney may not "delegate[] any of his fiduciary duties" and then "avoid responsibility for the manner in which those duties are carried out." *J. M. Cleminshaw Co. v. City of Norwich*, 93 F.R.D. 338, 348 n.5 (D. Conn. 1981) (imposing sanctions on supervisory attorney for co-counsel's failure to comply with discovery orders). Accordingly, Mr. Keller's claimed ignorance is no basis to deny sanctions.[1] This is particularly true given that the Texas state court filing was made *after* Kenvue advised Mr. Keller—via letter addressed to him directly—of his initial violation via the Florida state court filings, and *after* undersigned counsel had met and conferred with Mr. Keller's colleagues regarding the same.

**Second**, Mr. Keller contends that "[a] protective order is not 'an order to provide or permit discovery,' and therefore does not fall within the express terms of Rule 37(b)(2)(A)." Opp'n at 15. However, courts throughout this district "ha[ve] consistently held that a protective order issued under Rule 26(c) can be enforced through Rule 37(b)." *Jay v. Spectrum Brands Holdings, Inc.*, No. 13 Civ. 8137 (LTS) (DF), 2015 WL 6437581, at *5 (S.D.N.Y. Oct. 20, 2015); *see also, e.g.*, *Schiller v. City of New York*, No. 04 Civ. 7921 KMK/JCF, 2007 WL 1623108, at *3 (S.D.N.Y. June 5, 2007) ("Discovery orders that can be enforced through Rule 37(b) include protective orders

---

[1] *Naviant Marketing Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180 (3d Cir. 2003) (cited in Opp'n at 13), does not support Mr. Keller's position. In *Naviant*, the Third Circuit reversed the imposition of sanctions on an attorney under Rule 37 because it was "not provided with any details as to when and in what way counsel's conduct justified sanctions." *Id.* at 185. Here, by contrast, Kenvue has set forth those details—i.e., Mr. Keller's repeated signing of multiple filings that violated this Court's Protective Order.

2

issued under Federal Rule of Civil Procedure 26(c)."); *Flaherty v. Filardi*, No. 03 Civ. 2167 (LTS) (HBP), 2009 WL 3762305, at *5 (S.D.N.Y. Nov. 10, 2009) (same). Mr. Keller urges this Court to disregard "those decisions" and instead follow an out-of-circuit ruling from the Eleventh Circuit reaching a different conclusion. Opp'n at 15. But that case has been repeatedly "questioned" (indeed, rejected) as reflecting an unduly "narrow application of Rule 37(b)[.]" *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 489 (5th Cir. 2012) ("There is thus significant authority in support of the imposition of Rule 37(b) sanctions for violation of Rule 26(c) protective orders.") (collecting authorities). Mr. Keller offers no reasoned justification for departing from this District's prevailing approach to Rule 37.

***Third***, Mr. Keller also contends that he did not "disregard" the Protective Order because he "found out about any putative violation after the fact and acted promptly to remediate" it. Opp'n at 16. But this argument largely rehashes his prior attempt to avoid responsibility for his conduct. And contrary to Mr. Keller's claim, the fact that counsel subsequently took steps "to protect Kenvue's confidential information" by removing the improper filings from the docket does not excuse his initial violation. *Id.* Mr. Keller asserts that the "decision to use the confidential information" was "based on a good-faith assessment that the discovery would be 'produced in' the Florida 'Related Action'" and ultimately be useable under section 17 of the Protective Order. Opp'n at 17 (citing Romano Decl. ¶¶ 13-15, 20). This claim fails on multiple levels. For one thing, as Mr. Keller states elsewhere in his brief, the Protective Order "*require[s]*" materials to be redacted, Opp'n at 14; *see also* Protective Order, ¶ 20 ("Counsel shall take all reasonable and necessary steps to assure the security . . . ."). As a result, there is no justification for counsel's filing completely ***unredacted*** materials that were expressly marked "Confidential" in Florida. In any event, the Protective Order only permits the use of confidential information in a "Related

3

Action" if "the same *discovery has been produced*" in that other action. Protective Order, ¶ 17 (emphasis added). Not even Mr. Keller claims that the documents in question had actually been produced in the Florida case, and whether he believed they *would be* at some later date did not give him license to unilaterally introduce them into another case now. Thus, Mr. Keller clearly "disregarded" the Protective Order through his actions in the Florida case.[2]

This disregard was not an isolated act. Within a matter of days of filing his amended pleadings in Florida and after Kenvue put him on notice of his violation there, counsel once again violated the Protective Order in a Texas case. Mr. Keller claims that the Texas filing could not have violated the Protective Order because the documents were "fully redacted" and, thus, did not "reveal[]" any confidential information. Opp'n at 14. But again, the Protective Order does not merely preclude counsel from *revealing* confidential information; rather, it states broadly that "the documents, the information contained therein, and all other information produced or disclosed . . . . shall not be *used* in any other proceeding or action . . . . ." Protective Order, ¶ 17 (emphasis added). Courts construing similar language have recognized that the "use of protected information alone, even without disclosure, is a violation[.]" *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15-CV-2044 (AJN) (RLE), 2017 WL 2418742, at *3 (S.D.N.Y. June 5, 2017) ("The Court agrees" that "use of protected information alone, even without disclosure, is a violation of the Protective Order."); *see also On Command Video Corp. v. LodgeNet Ent. Corp.*, 976 F. Supp. 917, 922-23 (N.D. Cal. 1997) ("Plaintiff's *use* of protected

---

[2] Mr. Keller repeatedly references Kenvue's "past agreement" for deeming MDL discovery to have been produced in two specific state court actions. Opp'n at 1. However, those case-specific stipulations were only entered *after* Mr. Keller opposed adopting this Court's coordination order in those actions. *See, e.g.*, Opp'n at 5 ("Keller Postman opposed entry of the Coordination Order in California . . . ."); Romano Decl. ¶ 13 (similar). They in no way constitute a global agreement to deem all MDL discovery produced in all state court cases. Far less do they justify counsel's use of protected materials in cases where courts have not adopted this Court's (or their own similar) Protective Order.

4

information to file a *separate* state court lawsuit—as opposed to *this* litigation—is tantamount to no compliance at all."). Because Mr. Keller "did not seek permission from th[is] Court, using the confidential . . . information . . . is a violation of the Protective Order," regardless of whether the documents were fully redacted. *Errant Gene Therapeutics*, 2017 WL 2418742, at *3.[3]

*Fourth*, Mr. Keller argues that, even assuming he violated Rule 37, an award of sanctions would still be improper under the factors articulated by the Second Circuit in *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012). Opp'n at 18. However, the factors invoked by Mr. Keller are inapplicable to this case. As the line of authority relied upon by *World Wide Polymers* makes plain, those factors are "useful in evaluating a district court's exercise of discretion to **dismiss** an action under Rule 37." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009) (emphasis added); *see also World Wide Polymers*, 694 F.3d at 159 ("we apply the same standards as we would have if the district court dismissed the case"). Here, Kenvue is requesting the "'mildest' sanction specifically enumerated under Rule 37(b)" (i.e., attorneys' fees), which are "mandatory" unless the non-compliant party carries his "burden" of proving substantial justification or special circumstances showing that the award of fees would be unjust. *Jay*, 2015 WL 6437581, at *12 (citation omitted). Mr. Keller has not met that burden for all the reasons already discussed.

But even if the factors highlighted by Mr. Keller applied, they would not support him. The first factor (willfulness) weighs against Mr. Keller. As explained in Defendants' opening brief, Mr. Keller is a highly experienced attorney. Even assuming he sincerely believed there was some ambiguity surrounding the Protective Order, he could have—and should have—come to this Court

---

[3] Mr. Keller highlights the fact that "[o]nly four of the documents at issue were produced in the MDL," Opp'n at 4, but that misses the point. The Protective Order precludes the use of **any** protected document; there is no safe harbor for using just four.

5

to seek clarification. *See Grove Fresh Distribs., Inc. v. John Labatt Ltd.*, 888 F. Supp. 1427, 1439 (N.D. Ill. 1995) (when "a [party] undertakes his own interpretation of an order, and does not seek clarification, then he proceeds at his peril"), *aff'd*, 134 F.3d 374 (7th Cir. 1998). In addition, his decision to sign another set of pleadings in a different case days later that also used the same protected materials reflects conscious (i.e., willful) misconduct. *See Minskoff v. Mendoza*, 797 F. Supp. 3d 238, 266 (E.D.N.Y. 2025) ("That [counsel] did not come to this Court first and preview what he was going to do in [a separate, state court matter] so that this Court could grant or withhold permission is another indication of how brazen his violation was.").

The second factor (the efficacy of lesser sanctions) also weighs against Mr. Keller because there are no lesser sanctions available to compensate Kenvue for having to enforce the Protective Order or to deter future violations. The third factor (duration of the noncompliance) also cuts against Mr. Keller's position because he continued to violate the Protective Order after Kenvue promptly raised this issue with his colleagues. The only factor that arguably is not met (whether the non-compliant party had been warned of potential consequences) cannot outweigh the others because, as Mr. Keller's own authority recognizes, these "need not each be resolved against the" disobedient party. *World Wide Polymers*, 694 F.3d at 159.

Mr. Keller's reliance on *Richards v. Kallish* is also misplaced. In *Richards*, an attorney claimed that she "inadvertently" forwarded emails containing "attorneys' eyes only" information to her client in violation of a protective order. No. 22-cv-9095 (CS) (VR), 2024 WL 180869, at *7-8 (S.D.N.Y. Jan. 17, 2024). Although the court found that counsel's conduct was "unjustified and potentially sanctionable," it declined to impose sanctions because she "took ***immediate*** remedial measures, Defendants suffered no real prejudice, and there [were] measures short of sanctions that [were] available to the [c]ourt." *Id.* at *7 (emphasis added). *Richards* misapplied

6

Rule 37 by engrafting a prejudice requirement onto Rule 37,[4] and otherwise replacing the narrow exceptions of substantial justification and unjust circumstances with the *World Wide Polymers* factors. But even if *Richards* reflected a correct application of Rule 37, it is clearly inapposite because the attorney in that case "immediately" instructed her client to delete the protected information. In stark contrast, it was not until Kenvue raised the improper filings with Keller Postman that Mr. Keller attempted any corrective action. Even then, he proceeded to improperly use protected documents in another state court case. And to the extent prejudice is a relevant consideration, Kenvue has in fact been injured by having to "use its resources" to respond to counsel's violations. *See Errant Gene Therapeutics*, 2017 WL 2418742, at *3 (rejecting argument that party "suffered no harm" where the complaint was redacted and withdrawn because party "has been forced to use its resources to file this motion").

Mr. Keller dismisses all of Kenvue's authorities on the ground that they involved "for egregious and unrepentant protective order violations" that resulted in the public disclosure of confidential information. Opp'n at 21. But the fact that those cases involved ***more extreme*** conduct does not excuse Mr. Keller's misconduct here. And while those cases may have involved more extreme violations, they also involved more severe sanctions—including, for example, a substantial fine in addition to attorneys' fees, or a finding of contempt. *See, e.g.*, *Minskoff*, 797 F. Supp. 3d at 267 (imposing additional $50,000 penalty to "[e]nsure that defendant adheres to [the court's] rulings in this case, and . . . [to] signal the public as well that insubstantial attempts to circumvent Court authority will not be tolerated"); *Hunt v. Enzo Biochem, Inc.*, No. 06 CIV. 170 (SAS), 2011 WL 4840713, at *6-7 (S.D.N.Y. Oct. 12, 2011) (finding attorney in contempt and

---

[4]     Unlike Rule 37(c)(1) (which governs sanctions for the failure to disclose or supplement), Rule 37(b)(2)(C) (which governs violations of court orders) does ***not*** contain a "harmlessness" exception. *Compare* Fed. R. Civ. P. 37(c)(1) *with* Fed. R. Civ. P. 37(b)(2)(C).

7

imposing attorneys' fees).

***Fifth***, Mr. Keller argues that attorneys' fees are not warranted because the expenses incurred in filing the underlying motion for sanctions were not "caused" by any violation of the Protective Order. Opp'n at 22-23. Specifically, Mr. Keller claims that "[i]t was not necessary for Kenvue to incur expenses *after* Keller Postman fully complied with the protective order." *Id.* at 22. However, as discussed throughout this brief, Mr. Keller did ***not*** so comply; instead, he proceeded to use confidential materials in the Texas lawsuit. That continued misconduct validates Kenvue's decision to promptly move for sanctions. And Mr. Keller's initial misconduct ***did*** necessitate "attorney time associated with drafting the January 30 demand letter . . . participating in the February 2 meet-and-confer, and reviewing the motion to strike the Florida court filing." *Id.* at 23. Thus, Kenvue is entitled to these fees, at a minimum.[5]

## II. SANCTIONS ARE ALSO WARRANTED UNDER THE COURT'S INHERENT AUTHORITY.

As explained in Kenvue's opening brief, the Court should also formally reprimand Mr. Keller pursuant to its inherent authority. In response, Mr. Keller argues that neither he nor anyone at his law firm engaged in the requisite "bad faith" to support inherent authority sanctions. Opp'n at 24. While Kenvue did not argue bad faith in its opening brief, intervening developments demonstrate that the violations rise to that level. In particular, just days after Kenvue filed its motion, Mr. Keller's law firm partner, during a live hearing on Kenvue's motion to dismiss in that case, urged a Texas state court judge to permit Keller Postman to file under seal the very documents that Mr. Keller claims were fully redacted and therefore supposedly compliant with the Protective

---

[5] Mr. Keller also falsely accuses Kenvue of failing to comply with this Court's meet-and-confer rule. Opp'n at 23. However, as set forth in Kenvue's letter requesting an informal hearing/and or leave to file a motion for sanctions, defense counsel "has met and conferred with counsel from Keller Postman regarding" the misconduct at issue, and such meet and confer was unsuccessful (as evidenced by Mr. Keller's actions in Texas). *See* Doc. 1624.

8

Order. *See,* Feb. 12, 2026 Hr'g Tr. (attached as Exhibit I to the Brennan Declaration), at 6:3-12, *State of Texas v. Kenvue Brands LLC*, No. 2025-348 (Tex. Dist. Ct. Panola Cnty. Feb. 12, 2026). Mr. Keller's colleague even appeared to suggest that the materials be publicly disclosed because Kenvue supposedly had something to hide.[6] *Id.* at 9:5-15 ("And the reason we did is because of Kenvue Brands LLC's continued attempt to hide that information from the citizens of Texas and from this Court."). These circumstances reinforce that Mr. Keller and his colleagues are not acting in good faith.

Even absent bad faith, however, exercise of the Court's inherent authority would still be appropriate because "the attorney's misconduct falls within his . . . role as an 'officer of the court[.]'" *In re Plumeri*, 434 B.R. 315, 328 (S.D.N.Y. 2010) (Cote, J.) (quoting *United States v. Seltzer*, 227 F.3d 36, 41-42 (2d Cir. 2000)). Mr. Keller argues that this exception does not apply because the conduct "is directly tethered to Mr. Keller's and his firm's 'legitimate efforts at zealous advocacy'" on behalf of his clients in Florida and Texas. Opp'n at 24 (quoting *Seltzer*, 227 F.3d at 40). But the representation rule in *Seltzer* only applies to advocacy on behalf of the client ***in the present case***. *Seltzer*, 227 F.3d at 41-42 ("When a district court invokes its inherent power . . . to punish behavior by an attorney in '***the actions that led to the lawsuit*** . . . [or] ***conduct of the litigation*** . . . which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith") (emphases added). In any event, there is nothing "legitimate" about flouting court orders in other proceedings, which involve a lawyer's "failure to perform his or her

---

[6] Moreover, contrary to the Keller Postman firm's aspersions (i.e., Romano Dec., at ¶ 7), Kenvue has produced thousands of documents in the MDL without any confidentiality designation, as is apparent not only on the face of the documents themselves but also included in the accompanying metadata. *See, e.g.,* APAP-JJCI-0000003473, APAP-JJCI-0001039017, APAP-JJCI-0000207266, APAP-JJCI-0000958696, APAP-JJCI-0001654276.

9

responsibility as an officer of the court." *Id.*[7] Under Mr. Keller's theory, a lawyer could avoid responsibility for adhering to court orders by simply claiming that such conduct was done for the benefit of any client, anywhere. This Court should not countenance such an attempt to water down the professional responsibilities of lawyers, who serve as officers of the Court.

## CONCLUSION

For the foregoing reasons, as well as those set forth in Kenvue's opening brief, the Court should: (1) award attorneys' fees in the amount incurred by Defendants in filing the underlying motion; and (2) reprimand Mr. Keller for his misconduct.

Dated: February 20, 2026          Respectfully submitted,

         */s/ Jessica L. Brennan*
         Jessica L. Brennan
         Barnes & Thornburg LLP
         67 East Park Place, Suite 1000
         Morristown, NJ 07960-7105
         Tel: 973.775.6120
         Fax: 973.775.6102
         Email: Jessica.Brennan@btlaw.com

         *Attorneys for Johnson & Johnson Consumer Inc.*
         *now known as Kenvue Brands LLC*

---

[7] Although the Second Circuit reversed inherent authority sanctions for lack of bad faith in *Wolters Kluwer Financial Services, Inc. v. Scivantage*, 564 F.3d 110, 115 (2d Cir. 2009), it did not specifically address *Seltzer* or the officer-of-the-court exception to bad faith.

## LOCAL RULE 7.1 CERTIFICATION

    I hereby certify that this brief complies with the word-count limitations set forth in Local Rule 7.1(c) because it contains 2,873 words.

*/s/ Jessica L. Brennan*
Jessica L. Brennan
