UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------- X
                                         :        22md3043 (DLC)
IN RE: Acetaminophen – ASD-ADHD          :
Products Liability Litigation            :        OPINION AND
                                         :           ORDER
----------------------------------------- X

APPEARANCES:

For plaintiff's counsel Ashley Keller:
Ashley Barriere
Ashley C. Keller
Warren D. Postman
Roseann R. Romano
Keller Postman LLC
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606

For defendant-movant Johnson & Johnson Consumer, Inc. n/k/a
Kenvue Brands LLC:
Jessica L. Brennan
Barnes & Thornburg LLP
67 East Park Place, Suite 1000
Morristown, NJ 07960

DENISE COTE, District Judge:

The defendant Kenvue Brands LLC ("Kenvue") has moved for the entry of sanctions against plaintiffs' co-lead counsel Ashley Keller and his law firm Keller Postman LLC ("Keller Postman") for their failures to comply with a protective order entered in this multi-district litigation ("MDL").  It seeks to recover the attorneys' fees it incurred as a result of that conduct, as well as a formal reprimand of both Mr. Keller and the firm.  For the following reasons, the motion is granted in part.

## Background

This MDL was established on October 5, 2022, when, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation centralized plaintiffs' claims asserting that children developed autism spectrum disorder and/or attention-deficit/hyperactivity disorder as a result of in utero exposure to acetaminophen ("APAP Claims"[1]).  Following denial of a motion to dismiss on November 14, 2022, the parties presented the Court with a series of proposed interlocking orders for the management of the MDL.  In December of 2022 and January of 2023, over a dozen orders set up the framework for the management of the litigation.  Ordinarily, the parties presented a draft order, highlighting any disputes over its terms.  After the draft was revised one or more times, the parties were given an opportunity to object to the revised order before it was issued.  Among other things, these orders set up a jointly-accessible repository for discovery materials.  It had a searchable database that allows all counsel and the Court to receive customized reports of data culled from the database submissions. A Census Special Master manages the database and assists counsel in gathering relevant data.  Other orders ensured that

---

[1] "APAP" is an acronym for the chemical name of acetaminophen, "N-acetyl-para-aminophenol."

plaintiffs' counsel in the MDL performing common benefit work would be fairly compensated in the event other plaintiffs' counsel sought to use their work, including materials produced in discovery, to prosecute actions outside the MDL.  Another order sought to reduce the burden and expense of litigation for plaintiffs and defendants by allowing materials produced in the MDL to be used in other actions so long as several defined commitments were made by the parties and court in that other action.

The information produced by the parties in the MDL and contributed to the database pursuant to these orders included highly confidential medical information regarding the plaintiffs and their families and the defendants' confidential business information.  Two of those orders are of particular importance here.  They are the protective order of January 18, 2023 ("Protective Order"} and the discovery coordination order of January 27, 2023 ("Coordination Order").

The Protective Order is twenty-six pages long and prohibits the unauthorized disclosure of information produced in this MDL. It applies "to all documents, the information contained therein, and all other information produced or disclosed in connection with" the MDL by the party producing or disclosing the information to any other party.  Confidential Information and

3

Highly Confidential Information, which are defined in the Order, may not be disclosed unless permitted by the terms of the Order or if the producing party "designating the material as Confidential Information consents in writing to such disclosure, or the Court orders such disclosure."  The Order also instructs that Confidential and Highly Confidential Information "may be used only" in the MDL and "shall not be used in any other proceeding or action unless the same discovery has been produced in a 'Related Action' as defined in the forthcoming Order on the coordination of state and federal litigation."

The Coordination Order is nine pages in length and attaches a two-page sample order for state courts to execute in the event they wish to coordinate their litigation with the MDL.[2]  The Coordination Order explains that cases asserting APAP claims have been and are expected to be filed in state courts.  Such actions are defined as Related Actions.  The Order describes its purpose as follows: the Coordination Order

> seeks to enhance judicial efficiency, avoid undue burden on parties and third parties, and promote the just resolution of all cases pursuing APAP Claims.  To that end, this Order sets out principles and procedures for the coordination of pre-trial proceedings, including the conduct of fact discovery, in the MDL and Related Actions.  A Related Action in

---

[2] The Coordination Order explained that a state court could adopt the Coordination Order "by executing the attached Order or otherwise indicating the adoption of this Coordination Order for their action."

> which this Discovery Coordination Order has been
> adopted is referred to as a "Coordinated Action."
>
> It is the intent of this Discovery Coordination Order
> that the parties in the MDL shall take the lead in
> conducting discovery in connection with the litigation
> of all APAP Claims, that counsel in Coordinated
> Actions will have an opportunity to participate in
> that discovery, with the exception of participating in
> depositions taken of MDL experts, and that discovery
> produced and conducted in the MDL will be available to
> counsel in Coordinated Actions.  It is the intent of
> each Court that adopts this Order that no duplicative
> discovery will be taken or allowed in a Coordinated
> Action.

The Coordination Order therefore provided that "[n]o discovery produced or conducted in the MDL shall be provided to counsel in a Coordinated Action" unless three conditions were satisfied. The three conditions were: "(a) the Coordinated Action Court has adopted this Coordination Order, (b) each of the parties in the Coordinated Action has executed the MDL Protective Order, and (c) all plaintiffs' counsel in the Coordinated Action have executed the Participation Agreement."[3]  In the event a state court adopted the Coordination Order, it was deemed to adopt the Protective Order and other MDL Discovery Orders.

Another provision of the Coordination Order governs the use

---

[3] The Participation Agreement incorporates all MDL Orders, including the Coordination Order.  It binds the party and his/her attorney to share a portion of any recovery they receive from defendants to the MDL's common benefit fund.

5

of discovery produced in the MDL in a Coordinated Action.  It

provides that:

> With the exception of depositions taken of
> expert witnesses, discovery produced or
> conducted in the MDL may be used in a
> Coordinated Action as if produced or
> conducted in that proceeding to the extent
> permitted by the Coordinated Action Court.
> Any agreement with regard to discovery
> entered by the parties in the MDL and
> approved by the MDL Court shall have effect
> in a Coordinated Action as if it had been
> approved by the Coordinated Action Court.

Thus, unless a Related Action becomes a Coordinated Action and

is thereby governed by the Protective Order, discovery produced

in the MDL may not be used in the Related Action.

Keller Postman has served as plaintiffs' co-lead counsel in

the MDL since December 2022 and has also filed related actions

in California, Illinois, Florida, and Texas.[4]  The California and

Illinois state court matters were filed in February and April

2024, respectively.[5]  It is undisputed that Kenvue agreed with

---

[4] The parties do not address whether the Texas Action, which is
filed by the State of Texas and not a parent or guardian for a
child who has developed ASD or ADHD, should be considered a
Related Action as defined by the Coordination Order.

[5] In December 2023, the MDL granted the MDL defendants' Daubert
motions to exclude the MDL plaintiffs' experts on general
causation.  In re Acetaminophen - ASD-ADHD Prods. Liab. Litig.,
707 F. Supp. 3d 309 (S.D.N.Y. 2023).  That decision is under
review by the Court of Appeals for the Second Circuit.

Keller Postman that the documents it had previously produced in the MDL could be used in the California and Illinois matters.[6]

On December 15, 2025, Keller Postman filed a third Related Action in Florida state court ("Florida Action"). The MDL Coordination Order has not been adopted in the Florida Action. On January 13, 2026, Kenvue and its co-defendants moved to dismiss the complaint for lack of personal jurisdiction. In violation of the MDL Protective and Coordination Orders, Keller Postman's January 27 opposition, which was signed by Mr. Keller, described or quoted and attached four documents that Kenvue had produced in the MDL and designated as confidential under the MDL Protective Order. These four documents totaled approximately eleven pages of emails. Keller Postman's Roseann Romano, the attorney managing the Florida litigation, has explained in opposition to this motion that she anticipated that Kenvue would permit MDL discovery to be used in the Florida action, as it had in two prior related state court actions.

When it filed the opposition papers in the Florida Action, Keller Postman designated them as confidential and submitted a

---

[6] Kenvue explains that it stipulated to the plaintiffs' use of documents that Kenvue produced in the MDL because Mr. Keller opposed the adoption of the Coordination Order in those actions. Mr. Keller explains that he opposed entry of the Coordination Order in the California case because MDL discovery had closed pending entry of a final judgment.

"Notice of Confidential Information Within Court Filing" to request the Florida court's leave to file a motion to seal. On January 30, the Florida court clerk's office sent a letter to Mr. Keller noting that, upon review, "the information is not subject to confidentiality" and permitting a motion to permanently seal the documents. That same day, Kenvue wrote to Ms. Romano, Mr. Keller and others to assert that the plaintiff had violated the MDL Protective Order. It demanded that Keller Postman immediately take steps to seal the documents and to file amended documents removing all use of and reference to the protected information.

The parties met and conferred the next business day, on February 2. During this conference, Kenvue stated that the MDL discovery would not be available in the Florida Action. Later that day, Keller Postman agreed to withdraw its filing and submit amended opposition papers that did not contain any information designated as confidential from the MDL. On February 3, Keller Postman shared a draft motion to strike and proposed order with Kenvue's counsel. After incorporating suggested edits from Kenvue, Keller Postman submitted the motion to strike, proposed order, and amended opposition papers to the Florida court on February 4. On February 9, the Florida court

8

entered the proposed order striking the January 27 filing and removed it from the docket.

After Kenvue confirmed on February 2 that MDL discovery would not be available in the Florida Action, Keller Postman contacted Kenvue's counsel regarding use of the documents in a Texas action, which had been filed in October 2025 ("Texas Action").  The plaintiff in the Texas Action is the State of Texas and is represented not just by Keller Postman but also by the Attorney General of Texas and many attorneys working in that office.[7]  In its February 2 inquiry, Keller Postman asked whether Kenvue consented to the use of MDL discovery in the Texas Action by filing it under seal until there is a protective order entered in the Texas Action.  At this time, Keller Postman was preparing an opposition to a motion to dismiss for lack of personal jurisdiction.  Kenvue promptly responded, confirming that it did not consent and noted that the confidential information it produced in the MDL could not be used in the Texas Action because it was not governed by the MDL Coordination Order and Protective Order.  Nevertheless, in violation of the MDL Protective Order and the Coordination Order, on February 5,

---

[7] The record on this motion for sanctions is silent as to whether either the State of Texas or its counsel within the Attorney's General Office have executed a Participation Agreement or otherwise subjected themselves to a duty to keep MDL discovery confidential.

Keller Postman used confidential information produced in the MDL in its Texas opposition brief and in the affidavit from Mr. Keller filed in support of that brief.  Where the Kenvue confidential information had been specifically described or identified, however, Mr. John Masslon, the Keller Postman attorney managing the Texas Action, blacked-out those passages in the documents.

Mr. Keller's affidavit filed in the Texas Action explains that he serves as co-lead counsel for plaintiffs in the MDL and has personal knowledge of the matters set forth in his affidavit.  He asserts that "[b]ased on the evidence described below, Johnson & Johnson exercised ultimate control over Tylenol until it divested its consumer business to Kenvue."  Mr. Keller further explained that

> Discovery in similar cases shows Johnson & Johnson directly participated in the failure to warn about risks associated with Tylenol.  Documents identified herein that bear the Bates prefix "APA-JJCI" were produced by Kenvue Brands LLC in the federal multidistrict litigation or lawsuits pending in state court.

Material appearing in ten of the paragraphs that follow are entirely or partially obscured.

That same day, February 5, Mr. Keller and the other attorneys representing the State of Texas filed a motion for leave to file an unredacted version of its motion, Mr. Keller's

affidavit, and supporting documents under seal with the Texas court.  The motion for leave to file unredacted copies of the opposition under seal explained that the defendants in the Texas Action had "produced voluminous discovery in the multi-district litigation currently pending in the Southern District of New York" and that "[t]he discovery produced [in the MDL] shows that Defendants are subject to personal jurisdiction in Texas [and] that the State has pleaded sufficient facts to survive a motion to dismiss."  The motion also noted that "[a]llowing the information to be filed under seal would . . . ensur[e] that this Court has a full record to decide the pending motions."  It asked for leave to file unredacted copies "notwithstanding any protective order that Defendants are a party to."

On February 6, Kenvue moved before this Court for sanctions against Keller Postman and Mr. Keller.  It asserts that they violated the Protective Order when they used confidential materials produced in the MDL in the Florida and Texas Actions without first ensuring that those actions adopted the MDL Discovery Coordination Order and Protective Order.  Kenvue seeks the attorneys' fees it incurred as a result of the alleged violations under Rule 37 of the Federal Rules of Civil Procedure, as well as a formal reprimand of Mr. Keller and his firm pursuant to this Court's inherent authority.  On February

11

17, Keller Postman and Mr. Keller opposed the sanctions motion. On February 20, Kenvue filed its reply and the motion became fully submitted.

## Discussion

To be clear, both Keller Postman and Mr. Keller violated the MDL Protective Order and Coordination Order by using confidential information disclosed in the MDL in the Florida and Texas Actions. In Florida, Keller Postman violated the Protective Order by describing, quoting, and attaching four confidential documents to their January 27, 2026 opposition to Kenvue's motion to dismiss. In Texas, even after being notified in writing that Kenvue did not consent to the use of confidential MDL information in the Texas Action, Keller Postman and Mr. Keller violated the Protective Order and Coordination Order. They did so by filing documents on February 5 that relied upon or described confidential information produced in the MDL, including in the redacted opposition brief to Kenvue's motion to dismiss, Mr. Keller's affidavit, and the motion to seal. The issue that remains is whether sanctions should be imposed under Rule 37 and this Court's inherent authority. Because it is sufficient to impose sanctions under Rule 37, the Court declines to reach the request to impose sanctions under its inherent authority.

12

Courts are authorized by Rule 37 of the Federal Rules of Civil Procedure to impose sanctions for failure to comply with "an order to provide or permit discovery." Rule 37 specifies as follows:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders. They may include the following:
>
> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party. . . .

Fed. R. Civ. P. 37(b)(2)(A). Rule 37 also instructs that "[i]nstead of or in addition to" any such sanctions,

> the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C) (emphasis added).

In deciding whether to impose sanctions under Rule 37, courts consider, "the so-called Agiwal factors," among others:

(1) the willfulness of the non-compliant party or the reason for noncompliance;

(2) the efficacy of lesser sanctions;

(3) the duration of the period of noncompliance; and

(4) whether the non-compliant party had been warned of the consequences of noncompliance.

J.C. v. Zimmerman, 150 F.4th 136, 146 (2d Cir. 2025) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)).

As an initial matter, Mr. Keller and Keller Postman dispute that protective orders are orders "to provide or permit discovery" and, thus, whether violations of protective orders fall within the scope of Rule 37(b)(2) and its penalties. Although the Second Circuit has not yet decided this issue, courts in this District have consistently held that protective orders issued under Rule 26(c) can be enforced through Rule 37(b).  See, e.g., Jay v. Spectrum Brands Holdings, Inc., No. 13cv8137, 2015 WL 6437581, at *5 (S.D.N.Y. Oct. 20, 2015) (collecting cases).  This Court joins its colleagues in that conclusion and reiterates the importance of complying with protective orders, which "serve the vital function of securing the just, speedy, and inexpensive determination of civil

14

disputes."  SEC v. TheStreet.Com, 273 F.3d 222, 229 (2d Cir. 2001) (citation omitted).

In this case, the Protective Order was essential to both providing and permitting discovery.  The plaintiffs and defendants in the multitude of lawsuits within the MDL relied on the assurance of confidentiality provided by the Protective Order when they contributed vast quantities of their confidential and highly confidential information to a database accessible by scores of attorneys, their agents and experts.

For similar reasons, the Coordination Order is protected by Rule 37.  It is an order which provided and permitted discovery and whose violation may support the imposition of sanctions. The Coordination Order was the mechanism through which the MDL's protected discovery materials could be made available to litigants pursuing Related Actions outside the MDL.  The Coordination Order described the steps that would ensure that those litigants adhered to the confidentiality provisions in the Protective Order while benefitting from the discovery amassed through the MDL.  It also, of course, had additional benefits, which included saving judicial resources, enhancing the efficiency of discovery, and protecting the right of lead counsel for the plaintiffs in the MDL to benefit from their common benefit work.  The Coordination Order was entered just

nine days after the Protective Order, and together, they set the framework for access to vast troves of confidential information.

Under the terms of the Rule 37, Mr. Keller and Keller Postman must pay Kenvue's reasonable attorney's fees caused by their failure to abide by the Protective Order and the Coordination Order unless that failure was "substantially justified or other circumstances make an award of expenses unjust."  Rule 37(a)(5)(B), Fed. R. Civ. P.  Before turning to the arguments raised by Mr. Keller and Keller Postman to justify their actions, the Agiwal factors will be addressed.

I.   Willfulness

There can be little argument that the violations of the Protective Order and Coordination Order in the Texas Action were willful.  On the other hand, Kenvue has not shown that Keller Postman or Mr. Keller engaged in a willful violation of the Protective Order through their filings in the Florida Action. The Keller Postman attorney managing the Florida litigation explains that Keller Postman only referenced confidential information from the MDL in its opposition because it anticipated that Kenvue would permit MDL discovery to be used in the Florida action, as it had in two prior related state court actions after Keller Postman refused to follow the steps outlined in the Coordination Order.  Once Kenvue informed Keller

16

Postman on January 30 that it did not consent to reproducing MDL discovery in the Florida Action, however, Keller Postman attorneys sprung into action, filed a revised motion omitting any reference to the confidential information, and moved to withdraw its prior filing.  While it would have been preferable to comply with the Coordination Order or to obtain Kenvue's explicit prior consent to the use of its confidential information, this prompt corrective action succeeds in rebutting a finding of willfulness.

In stark contrast, Mr. Keller and Keller Postman acted willfully in the Texas Action in violation of the Protective and Coordination Orders.  Even after Kenvue confirmed on February 2 that it did not consent to the use of confidential information produced in the MDL in the Texas Action, Keller Postman attorneys and Mr. Keller still filed on February 5 a redacted opposition brief and supporting affidavit and a motion for leave to file unredacted documents that relied on or summarized confidential MDL information.  And, as explained above, the language in the motion demonstrates in stark terms Mr. Keller's willful noncompliance with the Protective Order.  After all, the motion explicitly described the confidential information and its relevance in the Texas Action, noting that "[t]he discovery produced [in the MDL] shows that Defendants are subject to

17

personal jurisdiction in Texas [and] that the State has pleaded sufficient facts to survive a motion to dismiss."

Mr. Keller's actions in the Texas Action and even his declaration submitted in opposition to the sanctions motion confirm his willful noncompliance.  Mr. Keller is a co-founder of Keller Postman and describes himself as the Senior Partner at the firm responsible for overseeing all litigation at the firm. While he offers a justification for his actions in connection with the Florida Action, he presents no similar justification for the Texas filings.

Mr. Keller explains that he delegates day-to-day management of cases but meets with case teams weekly to set overall strategy for cases.  Before signing his declaration submitted in the Florida action he focused on confirming that its contents were accurate but not apparently on the confidentiality of the documents described in his declaration.  On January 30, 2026, however, when he learned of the dispute concerning confidentiality, he immediately approved the proposal from his senior attorney responsible for the action, Roseann Romano, to withdraw the filing.

Thus, no later than January 30, Mr. Keller clearly understood that Kenvue was objecting to any use of its confidential MDL discovery materials.  Despite that

18

understanding, Mr. Keller participated directly in the violation of the Protective Order and Coordination Order in the Texas Action.

In his affidavit submitted in opposition to this motion for sanctions, Mr. Keller does not acknowledge the violation or explain why the Texas filings have not been withdrawn.  He tries instead to minimize his responsibility for what occurred.  He appears to argue in his February 17 affidavit to this Court that Mr. Masslon is the one who made the decision to proceed with the use of the confidential Kenvue material over Kenvue's objection, and that Mr. Masslon chose to do so by blacking out certain references to the material and by requesting that the Texas court allow unredacted documents to be filed under seal.  Mr. Keller does admit, however, that he reviewed his own affidavit that was filed with the Texas court.  He explains that he did so "to ensure the statements were truthful and accurate based on my personal knowledge."  In making this statement, Mr. Keller implies that he cabined his review of his affidavit, which Mr. Masslon prepared for him, to issues of accuracy and that he did not recognize that the affidavit liberally uses confidential MDL discovery information in violation of this Court's orders.  He also does not explain whether it was appropriate for him to request permission from the Texas court that his client be

permitted to continue to use confidential MDL discovery material in violation of the MDL Orders, albeit in filings under seal. Mr. Keller's February 17 affidavit fails to rebut the evidence that he willfully violated the Protective and Coordination Orders in connection with the Texas court filings.

It is important to note, however, that in his February 17 affidavit, Mr. Keller represents that he takes all court orders seriously and has never been personally sanctioned.  He adds as well that at some point in time after January 30 he instructed all Keller Postman attorneys about "the importance of strictly adhering to court orders."  He has also implemented a new policy that all agreements with opposing counsel on discovery matters "must be express, not implied."  These representations are important in deciding on the scope of any sanction to be issued.

II.  Efficacy of lesser sanctions

The second Agiwal factor, the "efficacy of lesser sanctions" to correct the violations, is of minimal relevance here.  To the extent Kenvue is requesting the recovery of its attorney's fees, that is mandatory.  To the extent it is requesting an admonition, the issuance of this Opinion and Order sufficiently addresses that request.

20

III. Duration

The next <u>Agiwal</u> factor is the duration of noncompliance. The period of noncompliance in the Texas Action appears to be ongoing.  Keller Postman and Mr. Keller have not informed this Court that they have taken any action to remedy the violation in Texas as they did in Florida, such as the withdrawal of the filings.

While Keller Postman points out that Kenvue did not ask Keller Postman to withdraw the Texas filings, that effort to excuse its violation and to shift the burden to Kenvue fails. Roughly a week earlier, Kenue had requested that Keller Postman withdraw the Florida filings, which Keller Postman did.  That should have been sufficient to put Keller Postman on notice that Kenvue would enforce its rights under the Protective and Coordination Orders.  And, before Keller Postman made the Texas filings, Kenvue objected in writing to the use of its confidential information in the Texas Action.  Despite that objection, Keller Postman proceeded to use its confidential information in a set of court filings.

IV.  Prior Warning

Keller Postman attorneys have not been previously warned of the consequences of noncompliance.  This Opinion marks the first occasion upon which the Court has addressed this topic.

21

V.    Justification

There is no indication that Keller Postman and Mr. Keller's violation in the Texas Action, which occurred after they received notice that Kenvue did not consent to the use of confidential MDL information, was "substantially justified" or that "other circumstances make an award of expenses unjust." Rule 37(a)(5)(B), Fed. R. Civ. P.  The arguments that Keller Postman and Mr. Keller make to excuse their actions are addressed next.

First, Keller Postman and Mr. Keller contend that "the[ir] Texas filing did not violate the protective order and, instead, shows a deliberate and good faith effort to comply with the protective order by not using the confidential information obtained via MDL."  They explain that the Texas filings did not "use" the confidential information because "the confidential information is not revealed in any way and has not been cited."  As the description of the Texas filings given supra illustrates, this contention is not correct.  The filings made arguments about what the confidential documents show, referred to the substance of the redacted confidential information, and blacked out swaths of quoted material, which served to highlight the extent of the confidential information.  Mr. Keller also asked to file unredacted copies under seal "nothwithstanding" the MDL

22

orders.  It is difficult to imagine that Keller Postman would agree that there had been no "use" of information if the shoe were on the other foot and its clients' confidential information produced in the MDL and sitting in the jointly-accessible database had been used in this manner.

Next and relatedly, they contend that they complied with the Protective Order by filing submissions containing confidential information "under seal or in redacted form," which they characterize as "precisely what the protective order required."  They are again incorrect.  The Protective Order states that confidential and highly confidential information produced in the MDL "shall be used solely for the purposes of" the MDL and "shall <u>not</u> be used in any other proceeding or action" unless the same discovery has been produced in a "Related Action" as defined in the Coordination Order. (Emphasis added.)  And the Coordination Order explains that no discovery produced in the MDL shall be used in a Related Action without adhering to the three conditions set out in that Order. Neither Order contains an exception for filings under seal or redacted filings.  Nor has the MDL discovery at issue here been independently produced in the Florida or Texas Actions.  Mr. Keller's February 5 motion, submitted to the Texas court, itself acknowledges that the filing of the protected documents under

23

seal would still constitute a violation of the MDL Orders; he requests leave to file unredacted copies of the documents "notwithstanding" the MDL Orders.

Keller Postman also argues, with regards to the Texas Action that, "if the Texas court orders the documents produced, using the documents is not a violation of the protective order," citing paragraph 22 of that order.  Paragraph 22, however, applies to the production of material pursuant to subpoena.  It provides that, when a party is served with a subpoena or other notice compelling production of material governed by the Protective Order, the party shall "object to the production" on the ground of the Protective Order.  It then adds that "[c]ompelled compliance" with any order of a court directing production of any Confidential Material "shall not constitute a violation of this Order."  Paragraph 22, therefore, does not justify Keller Postman's conduct.  The State of Texas is not being compelled by a Texas court to comply with a subpoena; it has not invoked the Protective Order to resist production; it is not even the party in legal possession of the documents.[8]

---

[8] It bears noting that a request by Mr. Keller that the Texas court allow the State of Texas to file confidential MDL documents under seal "notwithstanding" the Protective Order violates the spirit of paragraph 22, which imposes on the party in possession of the MDL-protected material to object to its production.

Keller Postman seems to suggest as well that there may be some ambiguity in the Protective Order or the Coordination Order that prevents the imposition of sanctions.  It does not describe the purported ambiguity with sufficient clarity, however, to allow the Orders to be clarified or to excuse the violations.  And its pattern of conduct reveals that it had a sufficient understanding of these Orders to be held to their compliance.  After all, Keller Postman took a leading role in the drafting, negotiation, presentation and approval of these Orders.  If there were ambiguity, it should have been raised and resolved before the Orders were issued.  Nor has Keller Postman requested of this Court that any ambiguity be clarified.  Moreover, it understood in the California and Illinois actions that it needed either to comply with the Coordination Order or to get Kenvue's consent to use its protected information.  And, when Kenvue objected to the use of its confidential information in the Florida Action, Keller Postman took steps to quickly withdraw the materials from the docket.

Finally, Keller Postman complains that Kenvue did not comply with this Court's Individual Practices that require parties to confer in good faith before raising discovery disputes with the Court.  In its letter of February 6 to this Court, Kenvue represented that it had conferred with counsel

25

from Keller Postman regarding the misconduct, and requested leave to file the motion for sanctions since their conference was unsuccessful. As evidence of the failure of those discussions, Kenvue points to the filing of the same confidential documents in the Texas Action within days of its meetings with Keller Postman over the Florida filings. Kenvue is not required to play whack-a-mole. When Keller Postman agreed to withdraw the Florida filings, Kenvue could reasonably expect that Keller Postman would not repeat the violation of the Orders. When Keller Postman violated those Orders so quickly again, despite Kenvue's explicit refusal to give its permission for the use of its documents, Kenvue was entitled to seek relief from the Court.

Thus, the only remaining question is what sanctions should be imposed. Kenvue seeks sanctions against both Keller Postman and Mr. Keller, one of the firm's founding partners and lead co-counsel in the MDL, under both Rule 37 of the Federal Rules of Civil Procedure and its inherent authority. Because both Keller Postman and Mr. Keller willfully violated the MDL Protective Order in the Texas Action, the Court imposes sanctions against them under Rule 37.

Keller Postman and Mr. Keller shall pay Kenvue's reasonable attorney's fees incurred in connection with the filing of this

sanctions motion.  Mr. Keller shall require every attorney at Keller Postman working on the MDL, any Related Action, and any action in which Keller Postman seeks to rely on MDL protected discovery material to read this Opinion and shall file an affidavit within two weeks confirming that he has done so.

## Conclusion

Kenvue's February 6, 2026 motion for sanctions pursuant to Rule 37 is granted.  The defendant may renew this motion for sanctions if plaintiffs' counsel engages in any future similar misconduct.  It may do so either by letter or by filing an additional motion.  The record described herein will be considered on any such motion.

Dated:    New York, New York
          May 8, 2026

                                    _____
                                            DENISE COTE
                                    United States District Judge

27